546 So.2d 229 (1989)
Kenneth D. McCOY, et al., Plaintiffs-Appellees,
v.
OTIS ELEVATOR COMPANY, INC., Defendant-Appellant.
No. 20,527-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
Rehearing Denied July 13, 1989.
Mayer, Smith & Roberts by John C. Turnage, Shreveport, for defendant-appellant.
Nelson, Hammons & White by John L. Hammons, Shreveport, for plaintiffs-appellees.
Before NORRIS and HIGHTOWER, JJ., and JASPER E. JONES, J. Pro Tem.
JASPER E. JONES, Judge Pro Tem.
Defendant, Otis Elevator Company, Inc., appealed a judgment rendered against it in a products liability suit which resulted from an injury sustained by a workman who was using a freight elevator manufactured without doors by defendant. Defendant raised four assignments of error:
(1) The jury erred in finding the elevator to be defective;
(2) The jury erred in not finding plaintiff to be 100% at fault;
(3) The jury erred in finding Otis to be partially at fault in view of the third party demand filed by it against the owner of the building in which the elevator was installed; and

*230 (4) The Louisiana Products Liability Act of 1988 should be applied retroactively to this suit and result in reversal.
Finding that the jury did not err, we affirm.
On August 26, 1982, plaintiff, Kenneth Dale McCoy was employed as an electrician with Burnett Electric Company. Burnett subcontracted the renovation of the Ward Building in downtown Shreveport. During the demolition phase of the work plaintiff disconnected, as instructed, all electric power in the building except for the elevators. Plaintiff worked at the Ward Building for a day and a half and had operated the freight elevator three or four times. On plaintiff's second day at the Ward Building he injured his thumb. Plaintiff utilizing the freight elevator designed, manufactured, and installed by defendant in 1923, went to the first aid station located on the third floor.[1] After receiving treatment for his thumb injury plaintiff re-entered the elevator to descend to the first floor but by mistake descended to the basement. The elevator itself contained no doors and unlike the other floors in the building, the basement had no door for entering or exiting the elevator. The basement was dark and the two-light ceiling fixture in the elevator was not functioning. Realizing that he was not on the first floor, plaintiff shifted around, pulled the lever on the manually-operated elevator, and began his ascent to the first floor. Unfortunately, plaintiff positioned part of his right foot beyond the confines of the cab, and as the elevator ascended his foot was squeezed between the floor of the elevator and the ceiling of the basement, causing serious injury. Plaintiff quickly freed his foot, went to the first floor, hobbled out of the elevator, and sought assistance. He was taken to the emergency room at Schumpert Medical Center where he was treated by an orthopedic surgeon.
Plaintiff was hospitalized for six days. After his discharge he utilized crutches for five weeks. Plaintiff returned to work as an electrician seven weeks after the accident but various problems persisted for a year and a half. Plaintiff's foot difficulties curtailed his recreational activities, and he is now a maintenance, rather than construction, electrician since that type of work is more compatible with his condition.
The plaintiff filed suit against Otis Elevator Co., Inc. and Quinn-L Corporation, believed to be the owner of the Ward Building. Plaintiff alleged that the elevator was defective mainly due to the elevator's lack of doors and light. Quinn-L's liability was predicated on the same grounds with the additional allegations concerning the general cluttered condition and insufficient lighting in the basement.
Otis and Quinn-L filed cross-claims against each other. The plaintiff settled with Quinn-L prior to trial and dismissed his claims against it. After a three day trial, the jury returned a verdict fixing plaintiff's damages at $20,000. Otis and Quinn-L were each found 25% at fault. Plaintiff was attributed 50% fault. A judgment was later signed which awarded plaintiff $5,000 against Otis. Otis appealed. Plaintiff neither appealed or answered the appeal.
It is well settled that the verdict of a jury should be affirmed by the appellate court unless the record reflects that the jury's conclusions of fact are not supported by the evidence or the application of law by the jury is clearly erroneous. Doss v. Hartford Fire Insurance Co., 448 So.2d 813 (La.App. 2d Cir.1984), writ denied 450 So.2d 359 (La.1984); Nailor v. International Harvester Co., 430 So.2d 784 (La. App. 5th Cir.1983), writ denied 437 So.2d 1148 (La.1983).
In order to recover from a manufacturer, the plaintiff must prove, among other essentials, that his damages resulted from a condition of the product that made it unreasonably dangerous to normal use. Bloxom v. Bloxom, 512 So.2d 839 (La. 1987); Halphen v. Johns-Manville Sales Corporation, 484 So.2d 110 (La.1986); Hunt v. City Stores, Inc., 387 So.2d 585 *231 (La.1980). "Normal Use" is a term of art that includes all intended uses, as well as foreseeable uses and misuses of the product. Bloxom v. Bloxom, supra; Rey v. Cuccia, 298 So.2d 840 (La.1974). A product is unreasonably dangerous per se or in design if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product. Halphen v. Johns-Manville Sales Corporation, supra; Hunt v. City Stores, Inc., supra.
It is undisputed that on the date of the accident the elevator did not have an inside door. Otis does not contest the fact that the elevator was manufactured and installed without an inside door. Plaintiff testified that he manually operated the elevator. Even though the lights were out in the elevator, plaintiff could see in the elevator when he passed between the floors because of the light which transmitted through the doors. As plaintiff descended to the basement he recognized that he was not on the first floor because of the darkness. Plaintiff shifted around and began his ascent up the elevator shaft to the first floor when his foot became trapped between the floor of the elevator and the ceiling of the basement. Plaintiff stopped the elevator, removed his foot, and proceeded to the first floor. Plaintiff was taken to the hospital where he was treated.
Dr. Hillman Deaton, a private safety consultant, testified on plaintiff's behalf. Deaton found certain safety hazards associated with the elevator. He initially found that there was no door or "gate" which would prevent a person from being exposed to the outward environment of the basement. He stated that without a door or "gate" there is always the possibility of a person within the elevator loosing his balance and falling. The movement of the elevator itself could cause a person to fall forward. Without a door or "cage" a passenger could conceivably and forseeably contact the structure of the shaft or any of the structural members of the inside of the building. In Dr. Deaton's opinion, if this elevator had been equipped with a door, plaintiff's accident could not have occurred because his foot would not have been able to protrude outside of the elevator. He concluded that the absence of the door caused the elevator to be unreasonably hazardous in its normal use.
Dr. Deaton also found other defects. These included: no door on the balcony landing, no numbers on the floors, no certificate of operation, no communication system inside, no load limit, and defective lighting.
Mr. John McCauly, a former Otis employee for 31 years, testified on defendant's behalf. He stated that the 1923 elevator, designed and built with no doors, was not unreasonably dangerous in normal use because the elevator required an attendant to operate it or the elevator would not move. In his opinion, the general contractor for the renovation was responsible for the landings and doors, as well as lighting in the elevator. He stated that an elevator being utilized without a light is not in normal use.
The jury could conclude from the evidence presented that the elevator manufactured without an inside door or "cage" was unreasonably dangerous in normal use.
Plaintiff's use of the elevator without lights is a foreseeable use or misuse within the meaning of Rey v. Cuccia, supra. Furthermore, the jury could find that but for the elevator being manufactured without the inside door the accident would not have happened.
The danger to which plaintiff was exposed is evident from the testimony of both plaintiff and Dr. Deaton. Plaintiff was exposed to an open shaft while the elevator was in operation. The movement of the elevator, according to Dr. Deaton, could easily cause the operator or other passengers to sway or fall forward. If the passenger fell forward he would be exposed to the bare walls and protrusions between the floors in the elevator shaft. Any appendage of the passenger located outside of the elevator could be crushed between the walls of the elevator and the shaft. The danger-in-fact, associated with an elevator without an inside door, is readily apparent to the trier of fact.
*232 The jury could assess the danger-in-fact and weigh it against the utility of an elevator without an inside door versus an elevator with an inside door. The absence of the inside door was a mere convenience feature associated with loading and unloading freight. The jury could conclude that the danger to which an occupant was exposed far exceeded the utility of this elevator design.
We conclude that there was a substantial evidentiary base for the jury to conclude that the hazardous nature of the elevator outweighed its utility.
Defendant next contends that the jury erred in not finding plaintiff to be 100% at fault. Defendant argues that plaintiff had full knowledge of the elevator's dangerous propensity and he acted with total disregard for his own safety.
Defendant's arguments ignore the fact that its manufacture, design, and installation of the elevator without doors was a substantial factor without which plaintiff's injuries would not have occurred. The jury evaluated the evidence presented and determined that plaintiff was negligent in causing his injuries and assessed plaintiff 50% at fault. Furthermore, the jury evaluated the evidence as it pertained to Quinn-L's duties and responsibilities associated with the maintenance and repair of the Ward Building. The jury concluded that Quinn-L was 25% at fault, and that Otis was 25% at fault. The jury's conclusions are based upon substantial evidence in the record and its determinations are not manifestly erroneous.
Finally defendant argues that Louisiana Products Liability Act, LSA-R.S. 9:2800.51 et.seq., should be applied retroactively. It contends that if the act is applied retroactively the judgment should be reversed because the act does not include the category of liability defined by the case law as unreasonably dangerous per se.
As a general rule, laws are deemed to be prospective in effect unless their language clearly indicates otherwise. LSA-C.C. Art. 6; LSA-R.S. 1:2; Green v. Liberty Mutual Insurance Co., 352 So.2d 366 (La.App. 4th Cir.1977), writ denied 354 So.2d 210 (La. 1978). LSA-C.C. Art. 6 provides that a law can prescribe only for the future; however, this rule applies only to substantive laws. Procedural or remedial legislation is to be given retroactive effect unless the language shows a contrary intent. Hawn Tool Co. v. Crystal Oil Co., 514 So.2d 636 (La.App. 2d Cir.1987); Lott v. Haley, 370 So.2d 521 (La.1979). Substantive acts are generally defined as those which create, confer, define, or destroy rights, liabilities, causes of action, or legal duties. Procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status. Hawn Tool Co. v. Crystal Oil Co., supra.
The Louisiana Products Liability Act clearly defines the causes of actions available under products liability and excludes the unreasonably dangerous per se category of recovery found in Halphen v. Johns-Manville Sales Corporation, supra. The act is a substantive legislation which defines plaintiff's cause of action and should be applied prospectively only.
For the reasons assigned the judgment of the trial court is affirmed. The cost of this appeal are assessed to defendant, Otis Elevator Company, Inc.
AFFIRMED.
HIGHTOWER, J., dissents and assigns written reasons.
HIGHTOWER, Judge, dissenting.
I cannot subscribe to the majority opinion which, in my view, fails to squarely address the case as it was presented at trial.
Concluding that the jury erred in finding the 1923 freight elevator to be defective the plaintiff having proceeded solely under the unreasonably dangerous per se theoryI respectfully dissent.
Although the majority recites most of the facts of the controversy, a few other aspects properly should be mentioned. Plaintiff knew that the lights in the elevator were not functioning and, in fact, so notified his superior the day before the accident. While it is mentioned that the *233 freight elevator had been used to carry passengers during periods of high demand on the building's passenger elevator, the record does not indicate that such occasions arose with any frequency or regularity. Also, the evidence clearly establishes that Otis had no contact whatsoever with the elevator after 1962 when the maintenance contract was awarded to another company.
In Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986) the Louisiana Supreme Court, after explaining the various theories of strict products liability, recognized that a plaintiff may choose to try his case upon any or all of those theories. And, if a product is proven to be "unreasonably dangerous per se," a new classification of unreasonably dangerous products, it is immaterial that the case could have been presented on the basis of other theories.
A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility. Under this concept, liability is imposed solely on the basis of the intrinsic characteristics of the offending product irrespective of the manufacturer's intent, knowledge, or conduct. Halphen, supra. Stated differently, the product is inherently unreasonably dangerous and, as a consequence, liability is imposed as a matter of law.
At one point the majority states that the jury could assess the danger-in-fact and weigh it against the utility of an elevator without an inside door versus an elevator with an inside door. Such an approach is not the test expressed in Halphen, under which the utility of the present product is to be considered, not that of a hypothetical product. More significantly, the record is totally devoid of any evidence of the utility of an elevator with an inside door. Furthermore, contrary to the majority view, I find no evidence of record reflecting that the absence of the inside door was a "mere convenience."
As mentioned, Halphen also set forth and discussed theories of recovery other than that of "per se." A product is deemed unreasonably dangerous in construction or composition if at the time it leaves the control of its manufacturer it contains an unintended abnormality or condition which makes the product more dangerous than it was designed to be. A manufacturer's failure to warn about a danger related to a product's design or a danger inherent in its normal use, and unknown or not obvious to the ordinary user, will result in an unreasonably dangerous classification. Finally, any one of three possible defects may render a product unreasonably dangerous because of its design: First, if the product fails the same danger-in-fact/utility test used in determining whether a product is unreasonably dangerous per se; second, if alternative products were available to serve the same needs or desires with less risk of harm; or, third, if a feasible way existed to design the product with less harmful consequences. Evidence as to whether the manufacturer, held to the standard and skill of an expert, could know of and feasibly avoid the danger is admissible under the failure to warn theory and the last two defective design theories, but it is inadmissible under the other approaches.
Plaintiff's petition states that the elevator was "defectively designed in that it was unreasonably dangerous in its normal and intended use" for nine specified reasons. At trial, however, plaintiff's attorney emphatically stated that he was proceeding solely under the unreasonably dangerous per se theory, and all evidence concerning Otis' knowledge and conduct was excluded because he had chosen to so proceed. Thus, the only question posed by the case is whether freight elevators, as shown by this record, are unreasonably dangerous per se, i.e., as stated in Halphen, too dangerous to be placed on the market.
Plaintiff's expert, Dr. Deaton, indicated that he based his opinion on some depositions, photographs, and a report by another safety professional who died prior to trial. He made no effort to obtain other information and did not personally view the accident site. The elevator was defective, Dr. Deaton opined, for six reasons: no door on *234 the elevator or balcony landing, no numbering on each floor, no communication system, no certificate of operation, no posted load limit, and defective lighting. He explained that the lack of floor numbering caused plaintiff to be unable to ascertain which floor he was approaching, but he did acknowledge the elevator contained a non-functioning light fixture with bulbs. However, Dr. Deaton quite clearly felt that the most significant aspect of the accident was the absence of doors on the elevator and in the basement opening, a defect he causally related to plaintiff's injury. Queried as to whether he believed the elevator was unreasonably dangerous, he replied, "I do, for the simple reason there was not a door at the basement level...." Also, he replied, "That's correct," when asked, "Do you consider the elevator to have also been unreasonably dangerous because there was no door on the elevator itself?" Dr. Deaton testified that the photographs he reviewed indicated that the elevator was manufactured with no door.
Cross-examination revealed that Dr. Deaton relied, at least in part, on the ANSI Code (American National Standards Institute Code), OSHA regulations, and the Elevator Safety Code. All of these regulations were promulgated long after the manufacture and installation of the elevator.
Mr. McCawley, defendant's expert, was accepted by the court as an expert in elevator design. His credentials include membership on the committee which promulgated the Elevator Safety Code and service as chairman of the Hoistway Committee, which concerns itself with the doors, hoistings, and enclosures. In forming his opinion concerning the elevator, Mr. McCawley utilized, among other reference items, various editions of the Elevator Safety Code, photographs, and the 1923 installation layout of the elevator. He stated that the elevator, designed and built with no doors, was not unreasonably dangerous in normal use. Furthermore, in his opinion, the general contractor for the renovation was responsible for the landings and doors, as well as lighting in the elevator.
In Halphen, supra, the Louisiana Supreme Court, of course, was addressing a question certified from the United States Court of Appeals for the Fifth Circuit. Based on the answer given, the Fifth Circuit concluded that the Louisiana Supreme Court had placed asbestos in the unreasonably dangerous per se category. See Halphen v. Johns-Manville Sales Corporation, 788 F.2d 274 (5th Cir.1986). Other than asbestos, however, our research has uncovered no case in which a product has been deemed unreasonably dangerous per se in Louisiana. In fact, when Louisiana's Third Circuit found that escalators fell into that category, the Supreme Court granted writs and, after reviewing a long history of escalator cases, concluded that escalators are not unreasonably dangerous per se, although they are unreasonably dangerous to small children. Brown v. Sears, Roebuck & Co., 514 So.2d 439 (La.1987).
The previous recapitulation of the evidence in the present case illustrates that the freight elevator was not shown to be unreasonably dangerous per se. No evidence was presented to demonstrate that the danger-in-fact of the product out-weighed the utility. Dr. Deaton, in his conclusion, essentially relied upon the lack of doors as causing this particular elevator to be unreasonably dangerous. Even viewed in that light, the record discloses no other mishaps resulting from the doorless condition during the previous 59 years of use, a quite lengthy period to say the least; and the utility of an elevator designed to haul freight is apparent. Clearly, then, plaintiff failed to satisfy his burden of establishing this product to be unreasonably dangerous per se, especially since some commentators have speculated that unreasonably dangerous per se is a category reserved for "super dangerous" products, a description inappropriate for a freight elevator, or even a doorless freight elevator.[1] *235 See Crawford, Developments in the Law, 1986-1987Torts, 48 La.L.Rev. 507 (1987).
Even though plaintiff indicated on several occasions during trial that the product itself was on trial under the "per se" theory, the evidence adduced would satisfy none of the other Halphen approaches. Certainly no defect in construction or composition was established since everyone agreed that the elevator was intentionally constructed with no door. This suit did not involve the failure to warn about a defect in the elevator, as plaintiff produced no evidence on the matter. Furthermore, such an approach would have been unavailing since the potential hazard posed by protruding limbs or members was readily apparent, and a manufacturer is not required to warn of dangers which are open and obvious. Foster v. Marshall, 341 So.2d 1354 (La.App. 2d Cir.1977), writ denied, 343 So.2d 1067 (La.1977). Finally, plaintiff did not seek to prove defective design, such as could be cured by use of an alternate product or design. If such a theory had been pursued, Otis would have been able, of course, to present a "state of the art" defense, all evidence of which was excluded at trial. Obviously, basic fairness would preclude evaluating the case under a theory against which the defendant was not permitted to offer its defense.
The jury having clearly erred in finding, as the case was presented, that the freight elevator fell into that category of things or products which are unreasonably dangerous per se, that portion of the judgment against appellant should be reversed.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, NORRIS, HIGHTOWER, HALL and LINDSAY, JJ.
Rehearing denied.
NOTES
[1] This freight elevator was designed to be operated by a fulltime elevator operator and though it was designated as a freight elevator it was used to carry passengers when the passenger elevator was incapable of handling the demand.
[1] We note that other courts have expressed uncertainty as to the sort of products which will fall into the "per se" category. After receiving the answer to their certified question, the Fifth Circuit stated, "We claim no prescience as to the universe of products which ultimately will be given the cognomen `unreasonably dangerous per se' ..." 788 F.2d 274, 275.