550 So.2d 1349 (1989)
Sidney J. POIRRIER
v.
TRAILMOBILE, INC., et al.
No. 88-CA-2296.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1989.
Rehearing Denied November 15, 1989.
Writ Denied January 12, 1990.
*1350 Raymond A. Milly, Lawrence A. Milly, Metairie, for plaintiff-appellant Sidney J. Poirrier.
John T. Culotta, Richard T. Simmons, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendant-appellee Trailmobile, Inc.
Mickey S. deLaup, Bernard, Cassisa, Saporito & Elliott, Metairie, for defendant-appellee Whiting Roll-up Door Mfg. Corp.
Before SCHOTT, C.J., and KLEES and LOBRANO, JJ.
KLEES, Judge.
Plaintiff filed suit on June 14, 1983 alleging he was injured on June 18, 1982 in the course and scope of his employment as a truck driver for McLean Trucking Company. Plaintiff was injured when he fell from the back of a trailer; he was attempting to close the trailer door by means of a strap, which broke when plaintiff took hold of it.
Plaintiff appeals a directed verdict in favor of defendants Trailmobile, Inc. and Whiting Roll-up Door Manufacturing Company. We affirm.
Original defendants included McLean and several co-employees of plaintiff, against whom plaintiff alleged intentional negligence in failing to properly maintain the trailer and failing to provide him a safe place to work. Plaintiff also sued Trailmobile, the manufacturer of the trailer, and Aetna, Trailmobile's insurer, alleging that the trailer was defective. Trailmobile and Aetna then third-partied Whiting, the manufacturer of the trailer door.
McLean and the individual defendants filed an exception of no cause of action with respect to the intentional tort claim. The appellate court maintained the exception, reversing the trial court, and the Louisiana Supreme Court denied writs.
On June 13, 1988, the products liability claim against the manufacturer defendants was tried before a jury in the district court. At the conclusion of plaintiff's case, the trial court granted defendants' motion for directed verdict. Judgment dismissing plaintiff's claim was signed on June 21, 1988. Plaintiff now appeals that judgment. After reviewing the record, we find that the trial judge was correct in granting the motion for directed verdict.
A motion for directed verdict is properly granted whenever, considering the evidence in the light most favorable to the non-moving party, the facts and inferences are so overwhelmingly in favor of the mover that the court believes that reasonable persons could not arrive at a contrary verdict. Campbell v. Mouton, 373 So.2d 237 (La.App.3d Cir.1979), writ denied, 415 So.2d 954 (La.1982); La.C.C.P. art. 1810. *1351 After reviewing the evidence in light of the products liability law of Louisiana, we agree with the trial judge that plaintiff cannot possibly prevail.
The Louisiana Supreme Court has held that in order to recover against the manufacturer of a product, an injured plaintiff must prove: (1) that his injury resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and (3) that the condition existed at the time the product left the manufacturer's control. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 113 (La.1986). We find, as did the trial judge, that the plaintiff, even considering the evidence in its most favorable light, failed to establish either of the second two elements necessary for recovery.
The Halphen court noted that there are several products liability theories that may be used to prove a product is unreasonably dangerous to normal use. 484 So.2d at 113. In the instant case, plaintiff argued in the trial court and reasserts on appeal that the trailer door was (1) unreasonably dangerous per se; (2) unreasonably dangerous in design; and (3) unreasonably dangerous due to the manufacturer's failure to provide an adequate warning. In our view, plaintiff did not present sufficient evidence under either of these three theories for the case to go to the jury.
A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product. Halphen, supra, at 114. There was no evidence introduced in the lower court tending to show that the trailer door and/or strap was unreasonably dangerous per se.
A product is unreasonably dangerous in design if: (1) Its danger-in-fact outweighs the product's utility (same test as for unreasonably dangerous per se); or (2) Although its utility outweighs the danger, alternative products were available to serve the same needs with less risk of harm; or (3) Although its utility outweighs the danger, there was a feasible way to design the product with less harmful consequences. Halphen, supra, at 115. At trial, plaintiff initially relied upon the expert testimony of George Pappas to establish that the trailer door was defective in design. Mr. Pappas was qualified as an expert in chemical engineering. As such, he testified that the strap was made of polyurethane and spandex fibers, which could be expected to gradually deteriorate from exposure to ultraviolet light over a period of ten to twenty years. He testified that the fibers provided him to analyze were between ten and twenty years old, but could not confirm that they were from the actual strap which broke in plaintiff's accident.
The trial judge refused to qualify Mr. Pappas as an expert in the design of trailers or trailer doors, which plaintiff asserts as error on appeal. After reviewing the testimony, we agree with the trial court's ruling. Mr. Pappas knew nothing about the Interstate Commerce Commission regulations concerning trailers. He had never before studied or testified as an expert in the design of trailers, doors, or vehicles. Therefore, the trial court correctly limited his testimony to that of a chemical analysis of the strap.
Following the failure of Mr. Pappas to qualify as an expert in design, the trial judge deliberately went beyond the scope of the pretrial order in allowing plaintiff to introduce another expert, Mr. Robert Lipp, so as to give plaintiff every chance to make out his case. Mr. Lipp was qualified as an expert in mechanical engineering. He stated that he had no experience in the design of trailers or roll up doors; nor was he aware of the industry standards. He had spent about three hours preparing to testify, during which time he had spoken with the plaintiff and had studied drawings of the trailer and door provided him by plaintiff's counsel, as well as a specification for the trailer. He had never seen the actual *1352 trailer. It was his understanding that McLean Trucking had drawn up the specification he was given.
Based on his study, Mr. Lipp concluded that an individual standing on a platform and operating the trailer door would be in a hazardous position because "to operate this door he can become unstable and can fall." However, Mr. Lipp later testified that the operation of these doors is not normally hazardous, because something else must occur to make the situation hazardous that is, the strap must break.
Neither the testimony of Mr. Pappas nor that of Mr. Lipp addressed the criteria specified by the Supreme Court in Halphen as necessary to show that a product is defective in design. Although plaintiff again contends that the trial judge erred by failing to qualify Mr. Lipp as an expert in the design of trailers, we agree with the trial court that like Mr. Pappas, Mr. Lipp lacked the necessary training and experience to be so qualified. The district court did not err by declining to send the case to the jury on the issue of defective design.
Plaintiff also argues that the trial court should have allowed the jury to decide whether the trailer door was unreasonably dangerous due to the manufacturer's failure to warn. Again, plaintiff introduced no evidence tending to show that Trailmobile had a duty to warn McLean about the door or that such a duty was violated. Rather, the evidence was overwhelming that the strap failed due to ordinary wear and tear and/or lack of maintenance.
The maintenance of the trailer and door was clearly McLean's responsibility. Plaintiff testified that McLean had a mechanics shop which handled maintenance of the trailers. In the morning, when plaintiff was assigned the trailer, he would inspect the tires, make sure the lights worked, make sure he had turning signals, "and that is it." He did not check the strap on the trailer door. If he noticed that the strap was broken, he would write it up in his report at the end of the day. As for the McLean mechanics, plaintiff stated "when they got around to it they might have fixed it." Plaintiff admitted that he always carried ropes in his truck which he used to pull down trailer doors that were missing straps or which had broken straps. He also testified that this particular strap didn't look new, but "had been on there for a while."
In addition to plaintiff's testimony, Mr. Williams, who had been the terminal manager of McLean's New Orleans office from 1982 until 1986, testified that the maintenance department was severely cut back in the early 1980's. He also confirmed that the trailers were sometimes operated with frayed straps.
In light of the testimony, we agree with the trial judge that plaintiff completely failed to show that the trailer door was unreasonably dangerous to normal use. Nor did plaintiff show that the condition of the strap which caused the accident existed when it left the control of the manufacturer; in fact, the evidence overwhelmingly shows that the strap failed because of normal wear during the time it was in the care of McLean. Therefore, we find no error in the trial court's granting of the directed verdict in favor of defendants.
Accordingly, the judgment of the district court is affirmed.
AFFIRMED.