**Esther B. HULIN, et al.**

v.

**FIBREBOARD CORPORATION, et al.**

Civil Action No. 86–11–B.

United States District Court, M.D. Louisiana.

Dec. 9, 1996.

George R. Covert, Baton Rouge, LA, Thomas E. Bezanson, Chadbourne & Parke, New York City, for Ester B. Hulin.

George R. Covert, Baton Rouge, LA, for Susan H. Berry, Thomas Hulin, Sally H. Blanchard, Mary H. Desselle, Joseph G. Hulin, Janet M. Hulin.

Edwin A. Ellinghausen, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, for Fibreboard Corporation.

David Lynn Tolin, Weller, Whellus & Green, Beaumont, TX, for Pittsburgh Corning Corp.

Kathleen Diane Lambert, Maria I. O'Byrne Stephenson, Law Offices of Maria I. O'Byrne Stephenson, New Orleans, LA, James B. Pressly, Jr., Haynesworth, Marion, McKay & Guerard, Greensville, SC, Lisa Carol Matthews, Stephenson, Matthews, Chavarri & Cerniglia, L.L.C., New Orleans, LA, for Rockwool Manufacturing Company.

Sally A. Shushan, Robert E. Winn, Sessions & Fishman, L.L.P., New Orleans, LA, David L. Wallace, Wallace & O'Neal, DeRidder, LA, Deborah A. Barnhart, Peter K. Eck, Bruce G. Sheffler, Chadbourne & Parke, New York City, for American Tobacco.

Charles Louis Chassaignac, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for Reynolds Robacco.

Valerie T. Schexnayder, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, for Flintkote Company.

## RULING ON MOTION IN LIMINE TO DETERMINE APPLICABILITY OF *HALPHEN*

POLOZOLA, District Judge.

American Tobacco Company's ("American") has filed a motion in limine seeking to have this Court determine the applicability of the "unreasonably dangerous per se" theory ("per se" theory) of products liability first enunciated in *Halphen v. Johns–Manville Sales Corp.*[1] For the reasons which follow, the Court finds that the "per se" theory of products liability was a substantive change in Louisiana law, and cannot be applied retroactively. Because the plaintiff's cause of action arose before *Halphen* was decided, the "per se" theory is not applicable to this case.

### ISSUE

The issue before the Court on the pending motion is very clear. Did the enunciation of the "unreasonably dangerous per se" theory of products liability in *Halphen* substantively change Louisiana law, or merely restate the law in Louisiana as it already existed?

Simply put, the issue the Court must decide on this motion in limine is "what law governs?" In order for the Court to decide this issue, it is necessary for the Court to review the Louisiana law on products liability. There are three separate time periods in which the products liability law in Louisiana can be divided: (1) the law as it existed before *Halphen* was decided on February 24, 1986; (2) the law as it existed under *Halphen*; and, (3) the law as it now exists under the Louisiana Products Liability Act ("LPLA")[2] which became effective on September 1, 1988.

Before *Halphen*, Louisiana did not explicitly recognize the "per se" theory of liability. When the Louisiana Supreme Court rendered its decision in *Halphen*, it marked the first time this theory was actually recognized and promulgated by the court. Thereafter, the Louisiana Legislature enacted the LPLA which abolished the "per se" theory of liability.

Plaintiffs' sole cause of action remaining against American is based on the "per se" theory of products liability. It is clear that plaintiffs' cause of action arose before *Halphen* was decided. Plaintiffs contend the Court may apply *Halphen* because the decision did not substantively change Louisiana law. American contends *Halphen* was a substantive change. Therefore, this Court must decide whether the "per se" theory of liability announced by *Halphen* was a substantive or procedural change in Louisiana law. If the "per se" theory is substantive, the Court

---

1. 484 So.2d 110 (La.1986).

2. La.R.S. 9:2800.51, et seq. (West 1991).

cannot apply the *Halphen* decision retroactively to this case.

## ANALYSIS OF THE LAW

A. *Brief Overview—Louisiana Law On Products Liability*

In order for this Court to determine if *Halphen* created a substantive change in Louisiana law, it is necessary for the Court to set forth a brief overview of the Louisiana law of products liability.

### 1. *Louisiana Products Liability Law Before Halphen*

The starting point for any discussion of the applicable products liability law in Louisiana before *Halphen* was decided and before the LPLA was enacted is *Weber v. Fidelity & Casualty Ins. Co.*[3] *Weber* set forth three categories of recovery in products liability for products which are unreasonably dangerous in (1) design, (2) composition and (3) manufacture. Under *Weber*,

[a] manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the *design, composition,* or *manufacture* of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect.[4] (Emphasis added.)

Although not discussed in *Weber,* pre-*Halphen* Louisiana law also recognized a fourth category of recovery involving products that are unreasonably dangerous due to a failure to warn.[5]

### 2. *Louisiana Products Liability Law After Halphen—But Before the LPLA*

*Weber* and *Halphen* each held that "[i]n order to recover from a manufacturer, [a] plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and the condition existed at the time the product left the manufacturer's control."[6]

*Halphen* not only incorporated the four theories of recovery listed above, but also added a fifth category for products which are "unreasonably dangerous per se." The "unreasonably dangerous per se" theory of products liability [was] "imposed solely on the basis of the intrinsic characteristics of the product irrespective of the manufacturer's intent, knowledge, or conduct."[7] This was "the purest form of strict liability and clearly distinguished from other theories in which the manufacturer's knowledge or conduct is an issue."[8]

"A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product."[9] "This theory considers the product's danger-in-fact, not whether the manufacturer perceived or could have perceived the danger, because the theory's purpose is to evaluate the product itself, not the manufacturer's conduct."[10] "The fact that a risk or hazard related to the use of a product was not discoverable under existing technology or that the benefits appeared greater than they actually were are both irrelevant."[11] Thus, "[i]f a plaintiff proves that the product is unreasonably dangerous per se, it is not material that the case could have been tried

---

3. 259 La. 599, 250 So.2d 754 (1971).

4. *Weber,* 250 So.2d at 755.

5. *Chappuis v. Sears Roebuck & Co.,* 358 So.2d 926 (La.1978); *Williams v. Allied Chemical Corp.,* 270 So.2d 157 (La.App. 1st Cir.1972), *writ not considered,* 271 So.2d 875 (La.1973).

6. *Mistich v. Volkswagen of Germany, Inc.,* 666 So.2d 1073, 1080 (La.1996).

7. *Halphen,* 484 So.2d at 113.

8. *Halphen,* 484 So.2d at 114.

9. *Halphen,* 484 So.2d at 114.

10. *Halphen,* 484 So.2d at 114.

11. *Halphen,* 484 So.2d at 114.

as a design defect case or other type defect case."[12]

The "state of the art" defense was abolished in a case tried solely under the "per se" theory.[13] The "state of the art" defense allowed the defendant to introduce evidence that "[h]e did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage or the danger of such characteristic."[14]

The Court now turns to a discussion of how the "per se" theory of liability became part of Louisiana tort law. This analysis is important because it will aid the Court in deciding whether the *Halphen* decision can be applied retroactively. The Court begins this discussion with a review of the arguments the plaintiff in *Halphen* made and the Louisiana Supreme Court's response. The plaintiff in *Halphen* argued that certain language in the *Weber* opinion was the genesis of the "per se" theory in Louisiana.[15] Weber stated that

[i]f the product is proven defective by reason of normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know the vices in the things he makes, whether or not he has actual knowledge of them.[16]

Similarly, under the "per se" theory, a manufacturer could be liable "irrespective of the manufacturer's intent, knowledge or conduct."[17] When the *Weber* court stated that "if the product is proven defective by reason of normal use, ... the manufacturer is presumed to know the vices in the things he makes,"[18] it appeared the *Weber* court had articulated an "unreasonably dangerous per se" theory of products liability. In fact, this was the argument made by the plaintiff in *Halphen.* The majority in *Halphen* rejected this argument. The *Halphen* court noted that *Weber* did not address "the difficult issues presented by scientifically unknowable dangers or liability for failure to warn." The *Halphen* court did "not attribute to the *Weber* court any intention to decide these issues prematurely."[19] Instead, the *Halphen* court noted that "*Weber* is the court's landmark opinion on strict products liability, and [the court] continue[s] to be guided by its basic holding and its spirit."[20] The *Halphen* court then proclaimed that "the principle of strict liability has developed since *Weber,* and its shape will continue to be molded by its purpose within our codal framework."[21]

Thus, the *Halphen* court did not rely on *Weber* in formulating the "per se" theory. Instead, the Louisiana Supreme Court concluded that the "per se" theory had "developed since *Weber.*" In addition, *Halphen* suggested that the "shape" of the "per se" theory would "continue to be molded" by the Louisiana Supreme Court. This language indicates that the "per se" theory had evolved since the court's decision in *Weber,* and, therefore, did not exist until *Halphen* was decided. This is an important distinction for this Court to consider in determining whether *Halphen* is to be applied retroactively in this case.

In summary, the plaintiff in *Halphen* attempted to have the court establish the "per se" theory based on prior Louisiana jurisprudence. The *Halphen* court expressly repudiated plaintiff's argument. Instead, the Louisiana Supreme Court analogized "the principle of strict products liability ... to the principle of legal fault or strict liability

**12.** *Halphen,* 484 So.2d at 114.

**13.** See William E. Crawford, Developments in the Law, 1985–1986, Part I, A Faculty Symposium, 47 La. L.Rev. 485, 488 (1986); *Berry v. Commercial Union Ins. Co.,* 565 So.2d 487, 490 (La.App. 2d Cir.), *writ denied,* 569 So.2d 959 (La.1990).

**14.** La. R.S. 9:2800.59(1) (West 1991).

**15.** See *Halphen,* 484 So.2d at 117.

**16.** *Weber,* 250 So.2d at 756.

**17.** *Halphen,* 484 So.2d at 113.

**18.** *Weber,* 250 So.2d at 756.

**19.** *Halphen,* 484 So.2d at 117.

**20.** *Halphen,* 484 So.2d at 117.

**21.** *Halphen,* 484 So.2d at 117–18.

underlying civil code articles 2317–22." [22] Since the above articles impose liability on certain parties for persons, animals or buildings in their care even without knowledge or reason to know of the unseasonable risk of harm to others, "[t]he manufacturer who places an unreasonably dangerous product on the market that causes injury to innocent victims ... [should also be held strictly liable] even if he has not been guilty of any negligence." [23]

Thus, *Halphen* relied "on analogy to the civil code" [24] in holding that a "manufacturer who places an unreasonably dangerous product on the market that causes injury to innocent victims should not be permitted to escape liability by showing the he did not know and could not have known of the danger." [25] Before *Halphen*, this "per se" theory of liability did not exist in the Louisiana Civil Code, the Revised Statutes or in the Louisiana jurisprudence. It seems the Louisiana Supreme Court established the "per se" theory based on analogy to Civil Code provisions and to other "empirical considerations." [26]

### 3. *Louisiana Products Liability Law After The LPLA*

The LPLA became effective on September 1, 1988 and applies to all causes of action accruing after its effective date. "One of the legislature's primary purposes in enacting the LPLA was to overrule *Halphen*," [27] and in particular, the "per se" theory of products liability. The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." [28] The LPLA provides four theories of recovery: (1) products that are unreasonably dangerous in construction or composition; [29] (2) products that are unreasonably dangerous in design; [30] (3) products that are unreasonably dangerous because of inadequate warning; [31] and (4) products that are unreasonably dangerous because of nonconformity to express warranty. [32]

The Louisiana Supreme Court has held that the LPLA abolished the "per se" theory of recovery, and therefore, "the Act alter[ed] substantive rights." [33] Therefore, the courts have ruled that the LPLA cannot be applied retroactively. [34]

### B. *"Unreasonably Dangerous Per Se"—Retroactive or Prospective Application*

As noted above, the "per se" theory of liability did not exist in Louisiana law before *Halphen*, and was expressly repudiated by the Louisiana Legislature when it enacted the LPLA. The question that remains unanswered by the Louisiana Supreme Court is whether the "per se" theory may be applied to causes of action arising before *Halphen* was decided. [35] This issue is complicated by the fact that the Louisiana Supreme Court, other Louisiana courts and the federal courts have frequently applied the "per se" theory to causes of action arising before *Halphen*

---

**22.** *Halphen*, 484 So.2d at 116. These articles contemplate the liability of parents for the acts of a minor, of curators for the acts of insane persons, of employers and teachers for the preventable acts of employees or students, of owners for the acts of animals, and of owners of buildings for injuries caused by disrepair.

**23.** *Halphen*, 484 So.2d at 116.

**24.** *Halphen*, 484 So.2d at 117.

**25.** *Halphen*, 484 So.2d at 117.

**26.** *Halphen*, 484 So.2d at 117.

**27.** *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir.1995).

**28.** La. R.S. 9:2800.52 (West 1991).

**29.** La. R.S. 9:2800.55 (West 1991).

**30.** La. R.S. 9:2800.56 (West 1991).

**31.** La. R.S. 9:2800.57 (West 1991).

**32.** La. R.S. 9:2800.58 (West 1991).

**33.** *Gilboy v. American Tobacco, Co.*, 582 So.2d 1263, 1264 (La.1991).

**34.** *Gilboy*, 582 So.2d at 1264.

**35.** One Louisiana appellate court has addressed this issue. See below for discussion of *Young v. Logue*, 660 So.2d 32 (La.App. 4th Cir.), *writ denied*, 664 So.2d 443 (La.), *writ denied*, 664 So.2d 443 (La.), *writ denied*, 664 So.2d 444 (La. 1995).

was decided.[36] None of these courts ever directly addressed the issue of whether the "per se" theory should be applied retroactively. Instead, each court merely applied the "per se" theory without comment and apparently without objection from the parties. The cause of action in *Halphen* itself accrued before 1982 since the trial in that case occurred in January of 1982 and the plaintiff died in 1981.[37] The alleged cause of action in the case now before the Court accrued before 1986.

■ Because there is no ruling by Louisiana's highest court on this issue,[38] it is the duty of a federal court sitting in diversity to predict what the Louisiana Supreme Court would decide in such a case.[39] In other words, when deciding an unresolved issue of state law, the federal court must make an "*Erie* guess" as to how the state's highest court would rule under the facts of this case.[40] When making this *Erie* guess, a federal court's prediction must be based on: (1) lower state court decisions and Supreme

Court dicta; (2) the general rule on the issue; and, (3) other available legal sources, such as treatises and law review commentaries.[41]

The unresolved issue of state law in this case is whether the "per se" theory of liability may be applied retroactively to causes of action arising before *Halphen*. This Court's prediction as to how the Louisiana Supreme Court might rule on this issue will be based on the factors listed above. Specifically, this Court will consider Louisiana law governing the retroactive application of laws and specific holdings and dicta from Louisiana Supreme Court cases and lower state court decisions in deciding whether the "per se" theory may be applied retroactively.

### 1. *Retroactivity of Law—Substantive or Procedural*

■ The Court's decision on whether the "per se" theory is retroactive depends upon whether the "per se" theory is classified as substantive or procedural. Substan-

---

**36.** The following cases applied the "per se" theory to causes of action arising before *Halphen*: *Hines v. Remington Arms Co., Inc.*, 648 So.2d 331 (La.1994); *Longo v. E.I. Dupont De Nemours & Co.*, 632 So.2d 1193 (La.App. 4th Cir.), *writ denied*, 637 So.2d 464 (La.1994); *Laing v. American Honda Motor Co.*, 628 So.2d 196 (La.App. 2d Cir.1993), *writ denied*, 635 So.2d 239 (La.1994); *Sharkey v. Sterling Drug, Inc.*, 600 So.2d 701 (La.App. 1st Cir.), *writ denied*, 605 So.2d 1099(La.), *writ denied*, 605 So.2d 1100 (La.1992); *Putman v. Gulf States Utilities*, 588 So.2d 1223 (La.App. 1st Cir.1991); *Berry v. Commercial Union Ins. Co.*, 565 So.2d 487 (La.App. 2d Cir.), *writ denied*, 569 So.2d 959 (La.1990); *Traut v. Uniroyal, Inc.*, 555 So.2d 655 (La.App. 4th Cir. 1989); *Poirrier v. Trailmobile, Inc.*, 550 So.2d 1349 (La.App. 4th Cir.), *writ denied*, 556 So.2d 58 (La.1990); *McCoy v. Otis Elevator Co.*, 546 So.2d 229 (La.App. 2d Cir.), *writ denied*, 551 So.2d 636 (La.1989); *Addison v. Williams*, 546 So.2d 220 (La.App. 2d Cir.), *writ denied*, 550 So.2d 634 (La.1989); *Antley v. Yamaha Motor Corp.*, 539 So.2d 696 (La.App. 3d Cir.1989); *Zumo v. R.T. Vanderbilt Co., Inc.*, 527 So.2d 1074 (La.App. 1st Cir.1988); *Prather v. Caterpillar Tractor Co., Inc.*, 526 So.2d 1325 (La.App. 3d Cir.), *writ denied*, 531 So.2d 272 (La.1988); *Price v. Corpus Engineering Assoc.*, 515 So.2d 589 (La.App. 1st Cir.), *writ denied*, 516 So.2d 133 (La.1987); *Bloxom v. Bloxom*, 512 So.2d 839 (La.1987); *LeBleu v. Homelite Division of Textron, Inc.*, 509 So.2d 563 (La.App. 3d Cir.1987); *Jurovich v. Catalanotto*, 506 So.2d 662 (La.App. 5th Cir.), *writ denied*, 508 So.2d 87 (La.1987); *Brown v. Sears Roebuck & Co.*, 503 So.2d 1122 (La.App. 3d Cir.), *aff'd*, 514 So.2d 439 (La.1987), *reh. denied per curiam*, 516 So.2d 1154 (La.1988); *Klem v. E.I. DuPont De Nemours & Co.*, 19 F.3d 997 (5th Cir.1994); *Johnstone v. American Oil Co.*, 7 F.3d 1217 (5th Cir.1993), *mandate recalled*, 17 F.3d 728 (5th Cir.1994); *Pennington v. Vistron Corp.*, 876 F.2d 414 (5th Cir.1989); *Valenti v. Surgiteck–Flash Medical Eng. Corp.*, 875 F.2d 466 (5th Cir.1989); *Vice v. Northern Telecom, Inc.*, 1996 WL 200281 (E.D.La.1996); *Williams v. Ciba–Geigy Corp.*, 686 F.Supp. 573 (W.D.La.), *aff'd* 864 F.2d 789 (5th Cir.1988); *Johnson v. Armstrong Cork Co.*, 645 F.Supp. 764 (W.D.La.1986).

**37.** *Halphen*, 484 So.2d at 112 n. 1.

**38.** The Louisiana statute permitting certification of issues from a federal court to the state's highest court only permits certification from federal appellate courts. La. R.S. 13:72.1 (West 1983). Therefore, this Court may not certify the question to the Louisiana Supreme Court.

**39.** *Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 295 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

**40.** *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 396–97 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

**41.** *Jackson*, 781 F.2d at 397. The Fifth Circuit in *Jackson* actually listed five sources of guidance to the "*Erie* guess." However, only these three are applicable here.

tive laws are presumed to apply prospectively only. In other words, "[s]ubstantive laws either establish new rules, rights and duties or change existing ones...." [42] "Procedural ... laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." [43] "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." [44] "It is well settled in Louisiana that laws affecting burden of proof are 'procedural'...." [45] No law, however, may be given an unconstitutional retroactive effect. [46]

Thus, if the Court finds that the "per se" theory of liability is substantive because it establishes a new right or remedy, the Court may only permit this theory of recovery to be applied prospectively from February 24, 1986, the date of the *Halphen* decision. However if the Court determines that the "per se" theory of liability is procedural because it only affects the burden of proof, the Court may permit this theory of recovery to be applied retroactively.

In deciding whether the "per se" theory is substantive or procedural, the Court must examine and follow the Louisiana Supreme Court's decision in *Gilboy v. American Tobacco Co.* [47] The court in *Gilboy* held that when the LPLA abolished liability based on a "unreasonably dangerous per se" theory, the LPLA eliminated a theory of recovery which previously existed in *Halphen*. [48] The Gilboy court further held that since the elimination of the "per se" theory of recovery altered substantive rights, the LPLA could not be applied retroactively. [49] Thus, the Louisiana Supreme Court has already held that the "per se" theory of products liability is substantive, and not procedural.

The Louisiana Fourth Circuit Court of Appeal in *Young v. Logue* [50] applied the same logic set forth in *Gilboy* in deciding whether the creation of the "per se" category in *Halphen* was a substantive change in the law. The defendants in *Young* made arguments identical to the arguments made by American in this case: that "just as *Halphen*'s theories of recovery cannot be denied to a plaintiff whose cause of action arose prior to the [LPLA (as professed by *Gilboy*)], neither can those theories be applied to cases where the cause of action arose prior to *Halphen* in 1986." [51] The *Young* court agreed with this argument holding that "[c]auses of action that accrued prior to *Halphen* are governed by the law of products liability as expressed in *Weber* and its progeny." [52]

In summary, the Louisiana Supreme Court has decided that the "per se" theory of recovery is substantive law. Because it is substantive law, the "per se" theory may not be applied retroactively. This still leaves open the question of whether *Halphen* merely restated Louisiana law as it already existed or whether *Halphen* actually created a new cause of action. The Court now turns to a discussion of this issue by reviewing excerpts from the *Halphen* opinion.

### 2. *Excerpts from Halphen*

A careful review of excerpts from the *Halphen* opinion indicates that the Louisiana Supreme Court intended to create a new cause of action in articulating the "per se" theory. Several times during the course of the opinion the court in *Halphen* used the future tense when setting forth reasons for its decision. For example, the Louisiana Su-

42. *Rousselle v. Plaquemines Parish School Board*, 633 So.2d 1235, 1244 (La.1994).

43. La. C.C. art. 6 (West 1996).

44. *Rousselle*, 633 So.2d at 1244.

45. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 182 (5th Cir.), *on rehearing*, 920 F.2d 259 (5th Cir.1990), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

46. *Rousselle*, 633 So.2d at 1244.

47. 582 So.2d 1263 (La.1991).

48. *Gilboy*, 582 So.2d at 1264.

49. *See Gilboy*, 582 So.2d at 1264.

50. 660 So.2d 32 (La.App. 4th Cir.), *writ denied*, 664 So.2d 443, *writ denied*, 664 So.2d 443, *writ denied*, 664 So.2d 444 (La.1995).

51. *Young*, 660 So.2d at 53.

52. *Young*, 660 So.2d at 53.

preme Court stated that "recognizing an unreasonably dangerous per se category ... *will provide even greater* incentives to produce safe products."[53] This language suggests that the "per se" theory is a new theory intended to force companies to produce safer products in the future. Later in the opinion, the court stated that the "per se" theory "will provide an effective incentive to eliminate all possible dangers before putting products on the market."[54] This language again indicates a new theory of liability which did not formerly exist under the then current law.

Finally, the court noted that "the rule we *have adopted* does not prevent the manufacturer from introducing evidence of scientific knowledge ... in cases where such knowledge is material, such as in duty-to-warn cases."[55] If the "per se" theory had existed in Louisiana before *Halphen*, there would have been no need for the Louisiana Supreme Court to "adopt" this rule in *Halphen*.

Furthermore, the *Halphen* court discussed *Weber* and *Weber's* impact on *Halphen*. The court stated that "the difficult issues presented by scientifically unknowable dangers or liability for failure to warn were not raised, and we do not attribute to the *Weber* court any intention to decide these issues prematurely."[56] This language indicates that the court did not derive the "per se" theory from prior or existing case law.

The *Halphen* court emphasized that the "per se" theory was not "purely" or completely "a judicial creation" because it was guided by civil code principles and societal considerations.[57] By noting the theory was not "purely a judicial creation", the court appears to indicate this theory was at least

partially a judicial creation. Finally, the court states the "shape" of *Weber* "will continue to be molded."[58] This statement demonstrates that the "per se" theory must have evolved since the decision in *Weber*, and, therefore, did not exist until *Halphen* was decided.

Thus, a close look at the language in *Halphen* itself reveals that the "per se" theory was not something that existed prior to *Halphen*. It is clear that *Halphen* did not merely restate Louisiana law as it existed at the time the opinion was rendered. The *Halphen* opinion indicates that the "per se" theory of recovery was created for the first time in *Halphen*.

### 3. Other Louisiana Supreme Court Cases Applying Halphen to Pre–Halphen Causes of Action[59]

As noted earlier, there are numerous cases where both state and federal courts have applied the "per se" theory of recovery to causes of action arising before *Halphen* was decided. None of these cases addressed the specific question of whether the "per se" theory was a substantive change that could only be applied prospectively. The Court's research indicates that the only case to consider this was *Young v. Logue*[60] which was previously discussed above. The Louisiana Supreme Court has applied the "per se" theory to pre-*Halphen* causes of action without discussing whether the "per se" theory could be applied retroactively in at least three cases: (1) *Hines v. Remington Arms Co., Inc.,*[61] (2) *Bloxom v. Bloxom,*[62] and (3) *Brown v. Sears, Roebuck & Co.*[63]

53. *Halphen,* 484 So.2d at 118. (Emphasis added.)

54. *Halphen,* 484 So.2d at 118. (Emphasis added.)

55. *Halphen,* 484 So.2d at 119. (Emphasis added.)

56. *Halphen,* 484 So.2d at 117.

57. *See Halphen,* 484 So.2d at 117.

58. *Halphen,* 484 So.2d at 118.

59. *See* footnote 60 for list of cases applying the "per se" theory to causes of action arising before *Halphen* was decided.

60. 660 So.2d 32 (La.App. 4th Cir.), *writ denied,* 664 So.2d 443, *writ denied,* 664 So.2d 443, writ denied, 664 So.2d 444 (La.1995).

61. 648 So.2d 331 (La.1994).

62. 512 So.2d 839 (La.1987).

63. 514 So.2d 439 (La.1987).

In *Hines,* the cause of action arose on February 29, 1984. The court stated that "[t]he applicable law in this products liability case is that set out in *Halphen*." [64] The *Hines* court also noted that the LPLA affects substantive rights, and, therefore, did not apply retroactively.[65] However, the *Hines* court never considered whether *Halphen* created substantive rights. In *Bloxom,* the cause of action arose on June 24, 1982. Justice James Dennis [66] (who also wrote the majority opinion in *Halphen* ), wrote for the majority and affirmed the decision of the court of appeal which held that a Firebird (sports car) was not "unreasonably dangerous per se." Again, the Louisiana Supreme Court did not address whether or not *Halphen* was retroactive, but merely applied *Halphen* to a pre-*Halphen* cause of action without further comment. Finally, in *Brown,* the cause of action arose on June 22, 1982. The Louisiana Supreme Court applied *Halphen* in holding that escalators were not "unreasonably dangerous per se."

It is difficult, if not impossible, for this Court to reconcile the Louisiana Supreme Court's decision in *Gilboy* with the three cases mentioned above. As stated above, *Gilboy,* decided in 1991, declared that when the LPLA abolished the "per se" theory, this was a substantive change in Louisiana law. However, *Hines,* decided in 1994, applied the "per se" theory to a pre-*Halphen* cause of action when, as clearly demonstrated above, *Halphen's* proclamation of the "per se" theory was a substantive change in the law. It would appear to this Court that if the abolishment of the "per se" theory by the LPLA was a substantive change, it should follow that the creation of the "per se" theory in *Halphen* was also a substantive change. This Court can only assume that the reason the Louisiana Supreme Court applied *Halphen* to pre-*Halphen* cases was the parties failed to raise the issue before the court.

■ Since this Court cannot set forth a reason for the apparent inconsistency in the

above opinions, this Court must rely on the Louisiana court decisions which have addressed the issue. None of the Louisiana Supreme Court cases cited above, and none of the state appellate court and federal cases cited in footnote 36, have addressed the issue which this Court must now decide: whether the addition of the "per se" theory of products liability by *Halphen* was a substantive change in the law. Only *Gilboy* and its progeny and *Young v. Logue* have addressed the question. As stated above, *Gilboy* held that when the LPLA abolished the "per se" theory of recovery, this was a substantive change in the law that could be applied only prospectively.[67] Based on this Court's understanding of *Gilboy,* it is logical to conclude that if abolishing the "per se" theory is a substantive change, the creation of the "per se" theory would also be a substantive change. This is the exact holding the court in *Young* made when faced with the same issue now before this Court.[68]

Since the Court's subject matter jurisdiction in this case is based on diversity jurisdiction, the Court is required to follow Louisiana law. Where the law is not clear, the Court must make an *"Erie* guess" as previously discussed in this opinion. This Court believes that if the very issue presented to this Court in this case was presented to the Louisiana Supreme Court, that court would hold that the creation of the "per se" theory of products liability by *Halphen* was a substantive change in the law and cannot be applied retroactively to causes of action that arose prior to February 24, 1986.

### C. *Conclusion*

It has been necessary for this Court to engage in a lengthy discussion and to conduct an exhaustive analysis of Louisiana law and jurisprudence to make an *"Erie* guess" of what the Louisiana Supreme Court would decide if faced with the issue now before this Court. The Court concludes that the Louisi-

---

64. *Hines,* 648 So.2d at 334.

65. *Hines,* 648 So.2d at 335 n. 3.

66. Judge Dennis is now a circuit judge on the Fifth Circuit Court of Appeals.

67. See *Gilboy,* 582 So.2d at 1264.

68. See *Young,* 660 So.2d at 53.

ana Supreme Court would hold that the "per se" theory of liability may not be applied retroactively to causes of action which arose before February 24, 1986, the date *Halphen* was decided.

Since the instant cause of action accrued before the *Halphen* case was decided on February 24, 1986, the "unreasonably dangerous per se" theory of products liability set forth in *Halphen* is not applicable to this case because the theory may not be applied retroactively.

**It is so ordered by the Court.**