REVISED, June 23, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 97-30734

_____

ESTHER B. HULIN, ET AL.

Plaintiffs

SUSAN H. BERRY; THOMAS HULIN; SALLY H. BLANCHARD;
MARY DESSELLE ROMANO; JOSEPH G. HULIN; JANET M. HULIN

Plaintiffs-Appellants;

VERSUS

FIBREBOARD CORPORATION, ET AL.

Defendants

AMERICAN TOBACCO COMPANY

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Middle District of Louisiana

June 9, 1999

Before DEMOSS, PARKER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The district court granted the defendants a summary judgment dismissing the plaintiffs' diversity products liability actions based on Louisiana law on the grounds that the decision of the Supreme Court of Louisiana in _Halphen v. Johns-Manville Sales_

*Corp.*, 484 So. 2d 110 (La. 1986), does not apply retroactively to causes of action which arose before the date it was decided, February 24, 1986. We reverse and remand the case to the district court for further proceedings. The Louisiana Supreme Court's decisions firmly establish the principles that under the state constitution and the Civil Code, courts do not make law but interpret and apply law made by the Legislature or derived from custom. In accord with those principles, the state's highest court has held that when it interprets the law in deciding a controversy between litigants in one case, that decision becomes the controlling interpretation of state law and must be given full retroactive effect in all other cases, unless the court declares otherwise or such application is barred by prescription or res judicata. Moreover, when the court interprets and applies the Civil Code in deciding a case, the foregoing general rule of adjudicative retroactivity is reinforced by civil law doctrine, under which the court's decision is considered to be declarative of what the Civil Code has always meant. The Louisiana Supreme Court did not limit the retroactive effect of its decision in *Halphen*, a case in which it interpreted and applied the Civil Code provisions of delictual law. Accordingly, under the *Erie* doctrine, we conclude that the Louisiana Supreme Court, applying its long-standing rule, would determine that *Halphen* applies retroactively, consistent with principles of res judicata and prescription. Consequently, *Halphen* must be given retroactive effect by federal courts in the same manner.

2

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 1986, Esther B. Hulin, Susan H. Berry, Thomas Hulin, Sally H. Blanchard, Mary H. Deselle, Joseph G. Hulin, and Janet M. Hulin ("plaintiffs") filed suit against American Tobacco Company ("American Tobacco") and various manufacturers of asbestos-containing products ("defendants") alleging that the defendants' products contributed to the lung cancer and June 3, 1985 death of Lenes J. Hulin, Jr., husband and father of the plaintiffs. In their complaint, the plaintiffs sought recovery under the theories of strict liability, ultrahazardous activities, and negligence. Six weeks after the complaint was filed, the Louisiana Supreme Court in *Halphen* answered the certified question asked by this federal court of appeals, by interpreting and applying the Louisiana Civil Code and its jurisprudence thereunder, and concluding that if plaintiff proves that the product was unreasonably dangerous per se, i.e., if a reasonable person would conclude that the danger-in-fact of the product outweighs its utility, whether because of defective design or another kind of defect, or unreasonably dangerous in construction or composition, a manufacturer may be held liable for injuries caused by the product even though the manufacturer did not know and reasonably could not have known of the danger. *Halphen,* 484 So. 2d at 116-17.

On November 23, 1987, the plaintiffs amended their complaint to add a products liability claim alleging that tobacco is unreasonably dangerous per se, i.e., because a reasonable person would conclude that the danger-in-fact of tobacco outweighs its

3

utility.

In April 1994, the district court in this case granted American Tobacco's motion for summary judgment and dismissed all of the plaintiffs' claims except their allegation that the defendants' products were unreasonably dangerous per se. On July 29, 1996, American Tobacco filed a motion in limine to determine the applicability of *Halphen* to this suit. On December 9, 1996, the district court issued its Ruling on Motion in Limine To Determine Applicability of *Halphen,* declaring that *Halphen* could not be applied retroactively to this case. In a separate ruling on that date, the court granted American Tobacco's motion for summary judgment and dismissed it from this case after concluding that the plaintiffs' sole remaining claim, that the defendants' products were unreasonably dangerous per se, was inapplicable in light of the court's nonretroactivity ruling. The plaintiffs appealed from this judgment.

## II. STANDARD OF REVIEW

A district court's decision of a question of state law is subject to *de novo* review by this court. *Salve Regina College v. Russell,* 499 U.S. 225, 231 (1991). A summary judgment ruling is also reviewed *de novo*, applying the same criteria employed by the district court. *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir. 1994).

## III. DISCUSSION

### A. Federal Courts Must Apply The Law of the State, Except in Matters Governed By the Federal Constitution Or By Acts of Congress

4

In *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court announced the governing principle that was to become the heart of the *Erie* doctrine:

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts.

*Id.* at 78.

The Court has stated that, in determining the content of the state law to be applied:

> the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State.

*Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *see also id.* at 477 ("[A]bsent a recent judgment of the State's highest court, state cases are only data from which the law must be derived. . . ." (Harlan, J., joined by Fortas, J., dissenting)). *See, e.g., Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397-98 (5th Cir.) (en banc) (In filling a void in state law the federal court may not do merely what it thinks best, but rather must do what it thinks the state's highest court would deem best.),

5

*cert. denied,* 478 U.S. 1022 (1986); *Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 295 (5th Cir.) (Although "[t]he decisions of lower state courts should be given some weight, . . . they are not controlling where the highest state court has not spoken on the subject."), *cert. denied,* 515 U.S. 1160 (1995); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir. 1967) ("[W]hen a federal court must determine state law, it should not slavishly follow lower or even upper court decisions but ought to consider all the data the highest court of the state would use."); 19 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4507, at 124 (2d ed. 1996) ("[A] responsible determination of state law involves something more than checking the digests for state court decisions on point[.]"); 19 WRIGHT ET AL., *supra* at 126-30 ("[T]he federal court must determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although usually this will be the case) as they have been decided by other state courts in the past."); 19 WRIGHT ET AL., *supra* at 157 ("Thus, intermediate appellate court decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the forum state would decide the matter in a different fashion." (citing, e.g., *Industrial Indem. Co. v. Chapman and Cutler*, 22 F.3d 1346, 1355 n.18 (5th Cir. 1994); *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 814 (7th Cir. 1992), *cert. denied,* 507 U.S. 1005 (1993))). *See also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.3, at 325 (3d ed. 1999) ("In other words, a federal court in a diversity case is to apply the law the state's

highest court likely would apply. The federal court should consider lower state court decisions, but is not bound to apply and follow them if the federal court believes that they would not be affirmed by that state's highest court. The federal court may consider all available material in deciding what law would be followed by a state.").

### B. Louisiana Judicial Retroactivity Doctrine Declared By The State's Highest Court And Derived From Civil, Common, and Constitutional Law Sources

Louisiana jurisprudential principles, doctrines, and traditions are derived from Anglo-American constitutional and common law models, as well as European civil law sources. Louisiana courts adhere to and apply the same constitutional principles of separation of powers, justiciability, case or controversy, and equal protection of laws as the federal and other state courts. Under Louisiana's Constitution, the power to make substantive laws is vested exclusively in the legislature. Under the State's constitution and Civil Code, Louisiana courts cannot make law but are bound to decide cases according to their best understanding of the law established by legislation and custom. The overwhelmingly prevalent norm in Louisiana, as in the common law, the federal courts, and civil law jurisdictions, is that judicial decisions must be applied retroactively.

In accordance with that authoritative standard, the Supreme Court of Louisiana has declared that the general rule is that, unless a judicial decision specifies otherwise, it is to be given both retrospective and prospective effect. *Succession of Clivens*,

7

426 So. 2d 585, 587, 594 (La. 1983) (on original hearing and rehearing); *Harlaux v. Harlaux*, 426 So. 2d 602, 604 (La.), *cert. denied,* 464 U.S. 816 (1983). Fifty years earlier the same court in *Norton v. Crescent City Ice Manufacturing Co.*, 150 So. 855 (La. 1933), applied substantially the same rule:

> The law as construed in an overruled case is considered as though it had never existed, and the law as construed in the last case is considered as though it has always been the law. As a general rule, the law as construed in the last decision operates both prospectively and retrospectively, except that it will not be permitted to disturb vested rights.

*Id.* at 858. *See also Construction Materials, Inc. v. American Fidelity Fire Ins. Co.*, 388 So. 2d 365, 367 (La. 1980) ("'[T]he decisions of a court of last resort are not the law, but only the evidence of what the court thinks is the law.'" (quoting *Norton*, 150 So. at 858)); *Jackson v. Doe*, 296 So. 2d 323, 323 (La. 1974) ("Prospective [only] application of judicial decisions is the exception rather than the general rule of law." (rejecting argument that *Garlington v. Kingsley*, 289 So. 2d 88 (La. 1974), overruling doctrine of charitable immunity, should operate prospectively only.)); *Jackson,* 296 So. 2d at 323 ("Prospective [only] application of judicial decisions is legislating." (Summers, J., concurring)); *Charles v. United States*, 15 F.3d 400, 402 n.4 (5th Cir. 1994) ("'Generally, [under Louisiana law] unless a decision specifies otherwise, it is given both retrospective and prospective effect.'" (quoting *Succession of Clivens*, 426 So. 2d at 587)); *Hutson v. Madison Parish Police Jury*, 496 So. 2d 360, 369 (La. App.

8

2d Cir.), *writ denied,* 498 So. 2d 758 (La. 1986) (same); *McLaughlin v. Herman & Herman*, 729 F.2d 331, 334 (5th Cir. 1984) (a diversity case finding that the rule of two Louisiana state court decisions "is within the general rule, rather than the exception, and therefore should be applied prospectively and retroactively").

The legislative power of the State of Louisiana is vested in the Legislature. LA. CONST. art. III, § 1.  Except as expressly provided by the constitution, no other branch of government, nor any person holding office in one of them, may exercise the legislative power.  *Id.* art. II, §§ 1, 2.  *See Board of Comm'rs of the Orleans Levee Dist. v. Department of Natural Resources*, 496 So. 2d 281, 286 (La. 1986).

Under the Louisiana Civil Code, legislation and custom are the only authoritative sources of law.  LA. CIV. CODE art. 1; A.N. YIANNOPOULOS, CIVIL LAW SYSTEM 117 (2d ed. 1999).  Jurisprudence, doctrine, conventional usages, and equity are merely persuasive sources of law.  YIANNOPOULOS, *supra* at 117.  Hence, the Louisiana Supreme Court consistently has held that judicial decisions interpreting and applying the provisions of the Civil Code operate both retroactively and prospectively because they "are not the law, but only the evidence of what the court thinks is the law." *Norton,* 150 So. at 858; *Construction Materials*, 388 So. 2d at 367 (quoting *Norton*); *see* YIANNOPOULOS, *supra* at 199.

In Louisiana and other civil law jurisdictions, the judicial method of applying Civil Code principles by analogy to facts unforeseen by the Code always has been used and considered as

judicial interpretation of law and not law making. *See Ardoin v. Hartford Accident and Indem. Co.*, 360 So. 2d 1331, 1334 (La. 1978); *Langlois v. Allied Chem. Corp.,* 249 So. 2d 133 (La. 1971); Ferdinand Fairfax Stone, *Tort Doctrine in Louisiana: The Materials For the Decision of a Case,* 17 TUL. L. REV. 159, 213 (1942); Joe W. Sanders, *The "Civil Law" in the Supreme Court of Louisiana,* 15 LA. B.J. 15 (1967); Clarence J. Morrow, *Louisiana Blueprint: Civilian Codification and Legal Method For State and Nation*, 17 TUL. L. REV. 537, 552 (1943). *See also* PHILIPP HECK, JURISPRUDENCE OF INTERESTS: AN OUTLINE, IN THE JURISPRUDENCE OF INTERESTS 41 (M. Magdalena Schoch trans., 1948); FRANCOIS GÉNY, MÉTHODE D'INTERPRÉTATION ET SOURCES EN DROIT PRIVÉ POSITIF §§ 107, 165, 166 (La. State Law Inst. trans., 2d ed. 1954). For example, the Louisiana Supreme Court in *Frazier v. Harper*, 600 So. 2d 59, 62-63 (La. 1992), held that its prior decisions in *Sims v. Sims*, 358 So. 2d 919 (La. 1978), and *T.L. James & Co. v. Montgomery,* 332 So. 2d 834 (La. 1976), could not be limited to prospective application because the court in those cases interpreted Civil Code Article 2402 (1870), and other community property principles, to require that an employee's pension right is a community asset to the extent that it derives from the employee's employment during the marriage. "Consequently, the judicial decisions . . . did not create law to be applied prospectively but interpreted principles of legislated law that antedated and governed the matrimonial regimes" established prior to the *Sims* and *T.L. James* decisions. *Id.* at 63.

In most cases, however, when the Louisiana Supreme Court

interprets and applies Civil Code principles by analogy to cases unforeseen by the Code, the issue of the temporal effect of the decision is not raised, because it is so well understood that whatever the court now holds to be the law of the Civil Code becomes what has always been the law, even if the new holding overrules or modifies an earlier decision of the court.[1]  One striking example is the Louisiana Supreme Court's use of the Code articles relating to servitudes by analogy to develop a complete body of mineral law to regulate and accommodate property interests created or affected by the unforeseen phenomenon of oil and gas production.  *See, e.g., Frost-Johnson Lumber Co. v. Salling's Heirs*, 91 So. 207 (La. 1920); Sanders, *supra* at 22; La. State Law Inst., *Introduction,* LA. MINERAL CODE*,* LA. REV. STAT. ANN. §§ 31 *et seq.* (West 1989); LA. REV. STAT. ANN. § 31:2 cmt. (West 1989).  Other outstanding instances may be seen in the state supreme court's decisions interpreting and applying Civil Code principles by analogy to recognize a community property right in pension funds; *Sims v. Sims*, 358 So. 2d 919 (La. 1978), and *T.L. James & Co. v. Montgomery,* 332 So. 2d 834 (La. 1976); and to afford individuals access to courts for reparation due to injuries caused by marketing

---

[1] *Cf.* Paul J. Mishkin, *Foreword: The High Court, The Great Writ, And The Due Process of Time and Law*, 79 HARV. L. REV. 56, 57 (1965) ("Most likely the [United States Supreme Court's] failure to respond in terms, [to pre-*Linkletter* suggestions that particular new holdings be given only prospective or limited retroactive effect], . . . rested on the belief that no answer was really necessary, that is so 'obvious' as to be taken for granted that whatever the Court now holds to be the law of the Constitution becomes 'what has always been the law' -- even if the new holding overrules an earlier decision of the Court.")

of unsafe products and by abuses of property rights that expose society to dangerous things, substances, instrumentalities, or technology. *See, e.g.*, *Weber v. Fidelity & Casualty Ins. Co.*, 250 So. 2d 754 (La. 1971); *Langlois v. Allied Chem. Corp.*, 249 So. 2d 133 (La. 1971); *Loescher v. Parr*, 324 So. 2d 441 (La. 1975); *Holland v. Buckley*, 305 So. 2d 113 (La. 1974); *Craig v. Montelepre Realty Co.,* 211 So. 2d 627 (La. 1968); *Butler v. Baber,* 529 So. 2d 374 (La. 1988); *Kent v. Gulf States Utils. Co.,* 418 So. 2d 493 (La. 1982). The Louisiana judiciary and legal profession consistently have considered these decisions to be fully retroactive and prospective generally because they are judicial decisions, rather than legislation, and in particular because they are considered to be judicial interpretations of the Civil Code.

What Francois Terré has said with respect to jurisprudence in French civil law is generally true in the Louisiana and other civil law systems:

> "[A] new jurisprudential rule is always applied in all new actions, without any consideration of the date on which the facts of the action occurred and even when these facts occurred prior to the change in the jurisprudence." That is so for a very simple reason. When it confers a certain sense on a [legislative] rule, the jurisprudence becomes part and parcel of [*fait corps avec*] that rule. As a result, this rule is thought to have always had this signification. More than retroactive the jurisprudence is, in the image of interpretative laws, *declarative*.

FRANCOIS TERRÉ, INTRODUCTION GÉNÉRALE AU DROIT 247 n.228 (4th ed. 1998) (quoting PAUL ROUBIER, LE DROIT TRANSITOIRE CONFLITS DES LOIS DANS LE TEMPS 24 n.7 (2d ed. 1960)) (Translation by J.R. Trahan, Associate

12

Professor of Law, L.S.U. Paul M. Hebert Law Center).

The technique of applying judicial decisions prospectively but not retroactively is inconsonant with the basic civil law tenet that courts interpret but do not make law. "It would certainly be in violation of Article 5 of the French Civil Code . . . and incompatible with the ideas of the redactors of the Louisiana Civil Code." YIANNOPOULOS, *supra* at 151. "No attempt has been made in France or Germany to develop a technique permitting such a disposition of a case. In view of the position taken by accepted French and German theory that a decision does nothing more than dispose of the case before the court, its development would be very difficult." ARTHUR TAYLOR VON MEHREN & JAMES RUSSELL GORDLEY, THE CIVIL LAW SYSTEM 1160 (2d ed. 1977) (footnotes omitted).

In the relatively small number of cases in which the Louisiana Supreme Court has limited the retroactive effect of its own decisions, it has expressly done so in the same opinion that announced the decision. *See, e.g., In re Adoption of B.G.S.*, 556 So. 2d 545, 558 (La. 1990) (limiting retroactive effect of its decision declaring unconstitutional an adoption statute purporting to give mother of illegitimate child power to terminate the father's parental rights without notice or opportunity to be heard); *Bergeron v. Bergeron*, 492 So. 2d 1193, 1200 (La. 1986) (applying restatement of jurisprudential burden-of-proof rule to child custody modification cases tried after finality of this judgment); *Lovell v. Lovell*, 378 So. 2d 418, 421-22 (La. 1979) (final alimony judgments would remain intact although they were

13

rendered under a law declared unconstitutional because it provided alimony for women only); *Barnett v. Develle*, 289 So. 2d 129, 147-49 (La. 1974) (limited retroactivity of declaration of unconstitutionality of firemen's minimum wage statutes); *Sumrall v. J.C. Penny Co.*, 120 So. 2d 67, 70 (La. 1960) (limiting retroactivity of interpretation of statute imposing penalties for non-payment of workers' compensation). *See also Cole v. Celotex Corp.*, 599 So. 2d 1058, 1072 (La. 1992) (dictum to the effect that when retroactive effect of a decision is to be declined the court clearly has articulated that the principle being announced was one overturning a firmly entrenched rule).

In *Succession of Clivens*, 426 So. 2d 585 (La. 1982), some members of the Louisiana Supreme Court may have entertained the idea of making the court's prior decision in *Succession of Brown*, 388 So. 2d 1151 (La. 1980), apply prospectively only under the *Chevron Oil* test, but a majority of the court rejected that notion. *Succession of Clivens,* 426 So. 2d at 594 (on rehearing). Instead, a majority agreed upon the result, but not upon a unified rationale, in deciding that *Succession of Brown* applies retroactively to January 1, 1975, the effective date of the 1974 Louisiana Constitution. The *Succession of Brown* decision, which was silent as to its temporal effect, declared Civil Code Article 919, which discriminated against illegitimate children in intestate successions, unconstitutional as conflicting with Article 1, § 3 of the 1974 Louisiana Constitution. Because there was no majority opinion in *Succession of Clivens*, it is impossible to divine a

14

clearly preponderate rationale for the result of that decision. The *Succession of Clivens* result, however, is consistent with an application of the general rule that, unless the court rendering the decision states otherwise, its decision applies retroactively. Because the court in *Succession of Brown* did not provide otherwise, its decision should apply retroactively, but its retroactivity must be limited by an independent overriding rule contained in the 1974 Louisiana Constitution.

It is well established that the effect of even a fully retroactive jurisprudential decision is limited by certain independent overriding legal principles. In both civil and common law systems, the fully retroactive effect of every judicial decision is barred by independent legal principles of law designed to place limits on litigation in the interest of legal stability. In the continental civil law systems, jurists recognize that the principle of *causae finitae* -- extinguished actions -- prevents retroactive legislation or judicial decisions from affecting litigation that has been terminated by a final judgment, closed by compromise, or extinguished by prescription. *See* ROUBIER, *supra* at 32; PATRICE LEVEL, ESSAI SUR LES CONFLITS DE LOIS DANS LE TEMPS 33 n.19, 161-62 n.90 (1959) (Translation by Prof. J.R. Trahan); JACQUES GHESTIN & GILLES GOUBEAUX, TRAITÉ DE DROIT CIVIL: INTRODUCTION GÉNÉRALE 415 n.462 (3d ed. 1990) (Translation by Prof. J.R. Trahan). That res judicata, statutes of limitation, and other independent legal principles have this effect in federal and common law is illustrated by the Supreme Court's decisions in *James B. Beam Distilling Co. v. Georgia*, 501

U.S. 529 (1991), and *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), discussed in some detail later in this opinion. In Louisiana, the principles of res judicata and extinguishment of rights or obligations by prescription limit the retrospective effect of retroactive legislation. *See Chance v. American Honda Motor Co. Inc.*, 635 So. 2d 177 (La. 1994) (prescription); *Hall v. Hall*, 516 So. 2d 119 (La. 1987) (same); *Belanger v. Great Am. Indem. Co.*, 188 F.2d 196, 198 (5th Cir. 1951) (Louisiana diversity case -- res judicata); *Petroleum Helicopters, Inc. v. Avco Corp.*, 834 F.2d 510, 511 (5th Cir. 1987) (same); *Harris v. Jackson*, 439 So. 2d 1120, 1121 n.4 (La. App. 1st Cir. 1983), *writ denied,* 444 So. 2d 1240 (La. 1984) (same). By analogy, although there is a dearth of jurisprudential discussion on the subject, there would appear to be a similar bar to the retroactive application of a new jurisprudential interpretation to actions that have been finally terminated by judgments or compromises, or extinguished by prescription. *Cf. Succession of Lambert*, 28 So. 2d 1, 9 (La. 1946).

An overriding independent legal principle established by Article 14, § 26 of the 1974 Louisiana Constitution provides that, subject to exceptions not here pertinent, the constitution is not retroactive and does not create any right which did not exist under the previous constitution based upon actions or matters occurring prior to the effective date of the 1974 constitution. The acknowledged illegitimate child's cause of action in *Succession of Brown* arose before the 1974 constitution upon the death of her

16

father in 1971.  When the 1974 Louisiana Constitution became effective on January 1, 1975, its new guarantee of equality for illegitimate children contained in Article 1, § 3 repealed or rendered unconstitutional Civil Code Article 919, which had denied such equality, prospectively from that effective date.  Because, as provided by Article 14, § 26, the 1974 Louisiana Constitution generally did not create new rights retroactively, the court's decision in *Succession of Brown,* recognizing new rights granted illegitimate children by Article 1, § 3, necessarily was limited in its retroactive effect to intestate successions opened after the effective date of the constitution on January 1, 1975.

In the present case, of course, we are not seeking to determine the "true" reason for the court's decision in *Succession of Clivens* or even to prove that it reached the correct result. *See* Katherine Shaw Spaht, *Developments in the Law (Successions)*, 47 LA. L. REV. 471, 471-79 (1986) (suggesting that *Succession of Clivens* cannot be reconciled with *Trimble v. Gordon*, 430 U.S. 762 (1977)). The discussion is intended merely to demonstrate that it cannot be said that *Succession of Clivens* was a departure from or inconsistent with the Louisiana doctrine of adjudicative retroactivity.

Additionally, it should be noted that the Louisiana Supreme Court has established by *jurisprudence constante* another independent legal principle in its consistent holdings that, where an injury has occurred for which the injured party has a cause of action, that cause of action is a right which is protected by the

17

guarantee of due process. *See Soloco, Inc. v. Dupree*, 707 So. 2d 12, 16 (La. 1998); *Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic*, 470 So. 2d 878, 878-79 (La. 1985); *Lott v. Haley*, 370 So. 2d 521, 524 (La. 1979); *Burmaster v. Gravity Drainage Dist. No. 2*, 366 So. 2d 1381, 1387 (La. 1978). The court has concluded that statutes enacted after the acquisition of such a cause of action, therefore, cannot be retroactively applied so as to divest the plaintiff of his cause of action because such a retroactive application would contravene the due process guarantees. *Faucheaux,* 470 So. 2d at 878; *Lott,* 370 So. 2d at 524; *Terrebonne v. South Lafourche Tidal Control Levee Dist.*, 445 So. 2d 1221, 1224-25 (La. 1984). The same principle, by analogy, appears also to be applicable to changes to jurisprudential interpretations brought about through subsequent judicial decrees. *Succession of Lambert*, 28 So. 2d at 9.

The Louisiana Supreme Court first recognized a strict products delictual liability theory of recovery under Louisiana civil law in *Weber v. Fidelity & Casualty Insurance Co.*, 250 So. 2d 754 (La. 1971). At that time, the Louisiana delictual articles, Civil Code articles 2315-2322, were virtually identical to those of the French Civil Code, and contained no literal basis for strict liability based on defective products. The principal provision, Article 2315, however, stated that, "Every act whatever of man, that causes damage to another, obliges him by whose fault it happened, to repair it." Thus, the principle of fault under the Code is a dynamic one, the meaning of which the legislature has left to the

18

interpretation of the jurists. *See Ardoin v. Hartford Accident & Indem. Co.*, 360 So. 2d 1331 (La. 1978); *Entrevia v. Hood*, 427 So. 2d 1146 (La. 1983); *Langlois v. Allied Chemical Corp.*, 249 So. 2d 133 (1971); GÉNY, *supra* § 99; MARCEL PLANIOL, 1 TRAITÉ ÉLÉMENTAIRE DE DROIT CIVIL § 5 (Quasi-Offenses), at 441-47 (La. State Law Inst., trans., 12th ed. 1939); STONE, LOUISIANA CIVIL LAW TREATISE: TORT DOCTRINE §§ 59, 60 (1977). Negligence and imprudence are not the only constituents of fault, for the courts, in order to obtain standards of fault, may advert to other articles of the Code, statutes, regulations, constitutional provisions, and even to the jurisprudence. *See Ardoin,* 360 So. 2d at 1334; Stone, *Tort Doctrine in Louisiana, supra* at 213. Accordingly, the Louisiana courts were authorized to recognize and interpret the strict tort products liability doctrine by analogy as a kind of fault under Civil Code articles 2315-2322. *See, e.g., DeBattista v. Argonaut-Southwest Ins. Co.*, 403 So. 2d 26, 30-31 (La. 1981); *Bell v. Jet Wheel Blast*, 462 So. 2d 166 (La. 1985); *Entrevia v. Hood*, 427 So. 2d 1146 (La. 1983); *Langlois v. Allied Chemical Corp.*, 249 So. 2d 133 (La. 1971).

By the mid-1980s, the Louisiana Supreme Court had indentified and applied a body of products liability principles by analogy within the framework of the Civil Code which included theories of recovery for manufacturing defects, risk/utility design defects, and failures to give adequate warnings. *See, e.g., Hunt v. City Stores, Inc.*, 387 So. 2d 585 (La. 1980) (applying risk/utility test for design defect products liability and strict liability under Civil Code Article 2317); *Winterrowd v. Travelers Indem. Co.*, 462

19

So. 2d 639 (La. 1985) (adequate warning); *Hebert v. Brazzel*, 403 So. 2d 1242 (La. 1981) (risk/consumer expectation design defect; adequate warning); *DeBattista v. Argonaut-Southwest Ins. Co.*, 403 So. 2d 26 (La. 1981) (risk/consumer expectation design defect case comparing strict liability under Civil Code Article 2317); *Chappuis v. Sears, Roebuck & Co.*, 358 So. 2d 926 (La. 1978) (adequate warning); *Weber v. Fidelity & Casualty Ins. Co.*, 250 So. 2d 754 (La. 1971) (manufacturing defect case recognizing that a product may be defective in design, composition, or manufacture). Along with the liability theories, the jurisprudence had recognized the defense of comparative fault. *Jet Wheel Blast*, 462 So. 2d at 171.

In 1985, this federal court of appeals certified to the Louisiana Supreme Court the question: May a manufacturer be held liable for injuries caused by an unreasonably dangerous product if the manufacturer establishes that it did not know and reasonably could not have known of the inherent danger posed by its product? *Halphen v. Johns-Manville Sales Corp.*, 755 F.2d 393, 394 (5th Cir. 1985) (en banc). Because the general nature of the question called for an answer based upon a comprehensive review of Louisiana law and jurisprudence related to products liability, the Louisiana Supreme Court surveyed the delictual provisions of the Civil Code, the strict products liability jurisprudence cited above, other related jurisprudence, *see, e.g., Turner v. New Orleans Pub. Serv., Inc.*, 476 So. 2d 800, 806 (La. 1985) (majority and concurring opinions); *Entrevia v. Hood*, 427 So. 2d 1146 (La. 1983); *Kent v. Gulf States Utils. Co.*, 418 So. 2d 493 (La. 1982); *Olsen v. Shell*

20

*Oil Corp.*, 365 So. 2d 1285 (La. 1978); *Loescher v. Parr*, 324 So. 2d 441 (La. 1975); *Turner v. Bucher*, 308 So. 2d 270 (La. 1975); *Holland v. Buckley*, 305 So. 2d 113 (La. 1974); *Langlois v. Allied Chemical Corp.*, 249 So. 2d 133 (La. 1971); *Welch v. Outboard Marine Corp.*, 481 F.2d 252 (5th Cir. 1973), as well as comparable decisions by federal and other state courts, and the writings of recognized leading commentators on products liability law. In an opinion discussing these authorities, the *Halphen* court answered the certified opinion: In a strict products liability case, a manufacturer may be held liable for injuries caused by an unreasonably dangerous product, although the manufacturer did not know and reasonably could not have known of the danger, if the plaintiff proves that the product was unreasonably dangerous because: (1) the danger-in-fact of the product, whether foreseeable or not, outweighed the utility of the product due to its design or due to the nature of the product per se; or (2) the product was unreasonably dangerous in construction or composition. *Halphen*, 484 So. 2d at 115-16.

In reaching its conclusions, the state supreme court in *Halphen* applied its previously developed products liability jurisprudence and, by analogy, as it had done in *Hunt* and *DeBattista*, the principle of legal fault or strict liability under Civil Code articles 2317-2322. *Id.* at 116. In its landmark decision in *Loescher v. Parr*, 324 So. 2d 441 (La. 1975), the court had marked the contours of this form of fault and liability essentially as follows: When harm results from the conduct of a

21

person or defect of a thing which creates an unreasonable risk of harm to others, a person legally responsible under these Code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The injured person must prove the vice (i.e., unreasonable risk of injury to another) in the person or thing whose act causes the damage, and that the damage resulted from this vice. Once this is proved, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. *Halphen,* 484 So. 2d at 116 (citing *Loescher*). Thus, the strict liability or legal fault arising from the Code provisions was more than a presumption of negligence. The owner or guardian could not be absolved of liability even if he proved that he did not know and could not have known of the unreasonable risk of harm to others. *Id.* (citing *Loescher* (strict liability for damage done by tree with a non-apparent internal disease under Civil Code Article 2317)); *Holland v. Buckley*, 305 So. 2d 113 (La. 1974) (strict liability for pet dog's first bite under Civil Code Article 2321); *Turner v. Bucher*, 308 So. 2d 270 (La. 1975) (strict liability of parent for damage caused by his child under Civil Code Article 2318); *Olsen v. Shell Oil Corp.*, 365 So. 2d 1285 (La. 1978) (strict liability of a building owner for premises defect under Article 2322)).

The Louisiana Supreme Court in *Halphen* noted that the

principle of strict products liability is analogous to the principle underlying Civil Code articles 2317-2322. Consequently, after fully describing the similarities, e.g., the custodian and the manufacturer both are in the best position to control unreasonable risk to others by the thing or the product, the court concluded that when a plaintiff proves that a product is badly defective because it is unreasonably dangerous in construction or composition, or because its utility is outweighed by its danger-in-fact due to its design or intrinsic nature, the producer should be held strictly liable to the innocent consumer regardless of scientific inability to know or avoid the danger. Otherwise, the liability of a manufacturer who distributes large numbers of such unreasonably dangerous products causing multiple injuries and deaths to innocent consumers would be less strict than that of an ordinary homeowner for the act or defect of his child, animal, or tree.[2] *Halphen*, 484 So. 2d at 116-18.

Subsequently, the Louisiana Supreme Court and the Louisiana courts of appeal have applied the jurisprudential Civil Code interpretations expressed in *Halphen* retroactively to a large

---

[2] Subsequent to *Halphen*, the Louisiana Supreme Court, in *Ross v. La Coste de Monterville*, 502 So. 2d 1026 (La. 1987), observed that, under French law, a manufacturer may be held strictly liable for the damage done by its defective product, a bottle of lemonade, after its sale to a consumer, on the theory that the manufacturer retained the *garde* of the structure of the product. *Id.* at 1030 (citing and quoting from *Société Commerciale Européenne des Brasseries "Brasseries de la Meuse" v. Etablissements Boussois-Souchon-Neuvesel, et al.*, Cass. 2e civ. ch., June 5, 1971 (quoted in VON MEHREN ET AL., *supra* at 676-77)).

number of cases.[3]

Considering the decisions of the Supreme Court of Louisiana and all pertinent material available, we conclude that the highest court of the State of Louisiana would continue to consider that its decision in *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986), applies retroactively, consistently with the state law of res judicata and liberative prescription. The Supreme Court of Louisiana consistently has held that, generally, unless a judicial decision specifies otherwise, it is to be given both retrospective and prospective effect. In *Halphen*, the state supreme court did

---

[3] *See, e.g.*, *Toups v. Sears, Roebuck & Co.*, 507 So. 2d 809 (La. 1987); *Bloxom v. Bloxom*, 512 So. 2d 839 (La. 1987); *Brown v. Sears, Roebuck & Co.*, 514 So. 2d 439 (La. 1987); *Reilly v. Dynamic Exploration, Inc.*, 571 So. 2d 140 (La. 1990); *Guidry v. Frank Guidry Oil Co.*, 579 So. 2d 947 (La. 1991), *overruled on other grounds*, *Gauthier v. O'Brien*, 618 So. 2d 825 (La. 1993); *Cosse v. Allen-Bradley Co.*, 601 So. 2d 1349 (La. 1992); *Hines v. Remington Arms Co.*, 648 So. 2d 331 (La. 1994); *Longo v. E.I. Dupont de Nemours & Co.*, 632 So. 2d 1193 (La. App. 4th Cir.), *writ denied*, 637 So. 2d 464 (La. 1994); *Laing v. American Honda Motor Corp.*, 628 So. 2d 196 (La. App. 2d Cir. 1993), *writ denied*, 635 So. 2d 239 (La. 1994); *Sharkey v. Sterling Drug, Inc.*, 600 So. 2d 701 (La. App. 1st Cir.), *writ denied*, 605 So. 2d 1099 (La.), *writ denied*, 605 So. 2d 1100 (La. 1992); *Putnam v. Gulf States Utils. Co.*, 588 So. 2d 1223 (La. App. 1st Cir. 1991); *Berry v. Commercial Union Ins. Co.*, 565 So. 2d 487 (La. App. 2d Cir.), *writ denied*, 569 So. 2d 959 (La. 1990); *Traut v. Uniroyal, Inc.*, 555 So. 2d 655 (La. App. 4th Cir. 1989); *Poirrier v. Trailmobile, Inc.*, 550 So. 2d 1349 (La. App. 4th Cir. 1989), *writ denied*, 556 So. 2d 58 (La. 1990); *McCoy v. Otis Elevator Co.*, 546 So. 2d 229 (La. App. 2d Cir.), *writ denied*, 551 So. 2d 636 (La. 1989); *Addison v. Williams,* 546 So. 2d 220 (La. App. 2d Cir.), *writ denied*, 550 So. 2d 634 (La. 1989); *Antley v. Yamaha Motor Corp.*, 539 So. 2d 696 (La. App. 3d Cir. 1989); *Zumo v. R.T. Vanderbilt Co.*, 527 So. 2d 1074 (La. App. 1st Cir. 1988); *Prather v. Caterpillar Tractor Co.*, 526 So. 2d 1325 (La. App. 3d Cir.), *writ denied*, 531 So. 2d 272 (La. 1988); *Price v. Corpus Eng'g Assocs.*, 515 So. 2d 589 (La. App. 1st Cir.), *writ denied*, 516 So. 2d 133 (La. 1987); *LeBleu v. Homelite Div. of Textron, Inc.*, 509 So. 2d 563 (La. App. 3d Cir. 1987); *Jurovich v. Catalanotto*, 506 So. 2d 662 (La. App. 5th Cir.), *writ denied*, 508 So. 2d 87 (La. 1987).

24

not specify that its decision was to be limited in its temporal application. The Louisiana Supreme Court also has held that a judicial decision interpreting the Civil Code operates both retroactively and prospectively, even if it overrules a prior jurisprudential interpretation, because it is not the law but only evidence of what the court thinks is the law. These holdings are consistent with the well-established principles of other civil-law jurisdictions. Likewise, in Louisiana and other civil-law jurisdictions, the judicial method of applying Civil Code principles by analogy to facts not specifically foreseen by the Code always has been used and considered to be judicial interpretation of the law and not lawmaking, because the only authoritative sources of law under the Civil Code are legislation and custom. In *Halphen*, the Louisiana Supreme Court applied Civil Code principles and prior jurisprudential interpretations of those principles by analogy to a products liability issue that had not been foreseen by the Code. Moreover, the Louisiana Supreme Court has established a rule of *jurisprudence constante*, in a series of uniform and homogenous rulings, that, where an injury has occurred for which the injured party has a cause of action, legislation or judicial decisions cannot be applied retroactively to divest the plaintiff of his cause of action because it is protected by the guarantee of due process. Although *jurisprudence constante* does not represent legislative force in the proper sense, such as is attached to legislated law or custom, its long and continuous use and influence indicate that it is in harmony with the Code and that

25

deviation therefrom would impair the social values protected by the Code and the precedent series. Because the state and federal courts in Louisiana already have applied *Halphen* retroactively to a large number of cases, a retrospective limitation of its jurisprudential interpretations to prospective-only application would violate the principle that similarly situated litigants should be treated equally. Finally, as noted in the next section of this opinion, the United States Supreme Court evidently has returned to the rule of adjudicative retroactivity, ending its thirty-year experiment with making new jurisprudential rules apply prospectively on a selective basis and, except perhaps for a very rare and extraordinary case, purely prospectively. Accordingly, the persuasive influence that the United States Supreme Court's decisions have on state courts with respect to retroactivity doctrine now will weigh on the side of the rule of adjudicative retroactivity.

The principal thrust of the district court's opinion and the defendant-appellee's position on appeal is that the Louisiana Supreme Court's decision in *Halphen* made substantive laws, and that, therefore, those laws must be applied prospectively only as if they were legislation enacted by the legislature. The argument is in diametric contradiction with the Louisiana Supreme Court decisions, the Louisiana Constitution, the Louisiana Civil Code, and civil law adjudicative retroactivity doctrine.

Under the distribution of powers by the Louisiana Constitution of 1974, the powers of government of the State are divided into

three separate branches.  LA. CONST. art. II, § 1.  Except for provisions not applicable in the present case, the constitution provides that no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.  LA. CONST. art. II, § 2.  The legislative power of the State is vested in a legislature, consisting of a Senate and a House of Representatives.  LA. CONST. art. III, § 1.  The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by the constitution.  LA. CONST. art. V, § 1.  The supreme court may establish procedural and administrative rules for the judiciary not in conflict with law.  LA. CONST. art. V, § 5(A).  Consequently, the Louisiana Supreme Court does not have the legislative power to make substantive laws of general application in the nature of legislation.  *See Orleans Levee Dist.*, 496 So. 2d at 286; *cf. State ex rel. Lisso v. Police Jury of Red River Parish,* 41 So. 85, 86 (La. 1906) ("[I]t is not, and cannot, reasonably, be asserted, that the judiciary department is vested with the slightest shadow of authority in the matter of making laws; its sole function being to interpret the laws, as made[.]").

Consistently with the constitution, and based on its own civil law tradition, Article 1 of the Louisiana Civil Code provides that the sources of law are legislation and custom.  In other words, Louisiana judicial decisions are not sources but interpretations of law.

The district court and the defendant-appellee disregarded the

27

substantial body of Louisiana Supreme Court decisions expressly holding that under the state constitution and Civil Code, judicial decisions are not law but the judges' interpretations of the law, and that a judicial decision is to be applied retroactively unless the court rendering it specifies otherwise. They pay no heed to any of the other authorities contrary to their position, such as the decisions of the United States Supreme Court and the learned works of civil- and common-law scholars. Instead, the district court and the defendant-appellee rely exclusively on a state court of appeal opinion that uncritically accepts a manufacturer-defendant's argument which is based on nothing more than a flawed syllogism of word-logic.[4] The statement in the court of appeal

---

[4] In *Young v. Logue*, 660 So. 2d 32 (La. App. 4th Cir.), *writ denied,* 664 So. 2d 443 (La.), *writ denied,* 664 So. 2d 444 (La. 1995), the court, without adverting to any of the Louisiana Supreme Court decisions and other authorities discussing adjudicative retroactivity, stated:

> Clemco correctly points out that in *Gilboy v. American Tobacco Co.*, 582 So. 2d 1263 (La. 1991), the supreme court opined that *Halphen's* theories of recovery are substantive rights that cannot be retroactively revoked by the Act. Thus, according to Clemco, just as *Halphen's* theories of recovery cannot be denied to a plaintiff whose cause of action arose prior to the Act, neither can those theories be applied to cases where the cause of action arose prior to *Halphen* in 1986.
> We conclude that this is correct.

*Id.* at 53. The reasoning in *Young* is faulty at several points. The Louisiana Supreme Court in *Gilboy* could not, and, correctly read, did not purport to transform its prior decision in *Halphen* into substantive law. *Gilboy* merely held that the LPLA was a substantive law enacted by the legislature that, under Civil Code Article 6, applied prospectively only because it contained no contrary legislative expression. *Halphen* was a judicial interpretation of the Civil Code, a substantive law enacted by the legislature, and *Halphen* applies retroactively because the court in *Halphen* did not say otherwise. Thus, it simply does not follow

28

opinion, which was not determinative of the outcome in that case, should be disregarded because of the other persuasive data that the Louisiana Supreme Court would decide the matter in a different fashion.  A federal court has a duty to determine state law as it believes the State's highest court would.  The decision of an intermediate appellate court may guide, but it is not necessarily controlling upon, a federal court when determining what the applicable state law is.  *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998); *Industrial Indem.,* 22 F.3d at 1355 n.18.  Moreover, "When a federal court of appeals is of the opinion, as we are in this case, that the district court's view of the applicable state law is against the more cogent reasoning of the best and most widespread authority, it must reverse the judgment of the lower court."  *Stool v. J.C. Penney Co.,* 404 F.2d 562, 563 (5th Cir. 1968).

**C. Background and Recent Developments**
**Of the United States Supreme Court's**
**Retroactivity Doctrine**

Although Louisiana judges are called upon to think and act as civil-law jurists when deciding cases under the Louisiana Civil Code, at the same time they are judges in the Anglo-American tradition who are more often engaged in the interpretation and application of law derived from American state, federal, and other Louisiana law sources outside the ambit of the Civil Code.

---

that, because the LPLA is substantive legislation applying prospectively only, *Halphen* cannot be a retroactively applicable judicial interpretation of previously enacted substantive legislation.  Louisiana law and jurisprudence are to the contrary.

Consequently, the nature of the entire Louisiana judicial process is also heavily influenced by common-law traditions, United States Supreme Court decisions, and the laws and jurisprudence of other states. The Supreme Court of Louisiana, like courts of other states, gives careful attention to the United States Supreme Court's opinions explaining common-law traditions and constitutional principles that influence the role of the judiciary and the temporal effects of judicial decisions. Accordingly, we must take those opinions into account in our effort to ascertain the probable course of future developments in the Louisiana doctrine of retroactivity.

The general principle that statutes operate prospectively and judicial decisions apply retroactively had been followed by the common law and the Supreme Court's decisions "for near a thousand years." *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting); *see Robinson v. Neil*, 409 U.S. 505, 507 (1973); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311-12 (1944).[5] The Supreme Court, in *Linkletter v. Walker*, 381 U.S. 618

---

[5] Justice Scalia, concurring in *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 107 (1993) (Scalia, J., concurring), explained the traditional judicial role as follows:

> The conception of the judicial role that [Chief Justice John Marshall] possessed, and that was shared by succeeding generations of American judges until very recent times, took it to be "the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added) -- not what the law shall be. That original and enduring American perception of the judicial role sprang not from the philosophy of Nietzsche but from the jurisprudence of Blackstone, which viewed

(1965), however, developed a doctrine under which it could deny retroactive effect to a newly announced rule of criminal constitutional law. According to *Linkletter*, a decision to limit the new rule to prospective application could be based upon a balancing of the purpose of the new rule, the reliance placed upon the previous view of the law, and the effect on the administration of justice of a retrospective application. *Id.* at 636 (limiting *Mapp v. Ohio*, 367 U.S. 643 (1961)).

In the federal noncriminal law context, the Supreme Court

retroactivity as an inherent characteristic of the judicial power, a power "not delegated to pronounce a new law, but to maintain and expound the old one." 1 W. BLACKSTONE, COMMENTARIES 69 (1765). Even when a "former determination is most evidently contrary to reason . . . [or] contrary to the divine law," a judge overruling that decision would "not pretend to make a new law, but to vindicate the old one from misrepresentation." *Id.* at 69-70. "For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that it was not law." *Id.* at 70 (emphasis in original). Fully retroactive decisionmaking was considered a principal distinction between the judicial and the legislative power: "[I]t is said that that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases." T. COOLEY, CONSTITUTIONAL LIMITATIONS 91. The critics of the traditional rule of full retroactivity were well aware that it was grounded in what one of them contemptuously called "another fiction known as the Separation of powers." Kocourek, *Retrospective Decisions and Stare Decisis and a Proposal*, 17 A.B.A.J. 180, 181 (1931).

31

similarly recognized that a judicial decision could be applied nonretroactively if it established a new principle of law, if such a limitation would avoid substantial inequitable results, and if retrospective application would not retard the purpose and effect of the new rule. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971).

In *Griffith v. Kentucky*, 479 U.S. 314 (1987), the Supreme Court overruled *Linkletter* and held that all newly declared rules of law must be applied retroactively to all criminal cases pending on direct review. *Id.* at 322. The Court based its decision on two basic norms of constitutional adjudication, *viz.*, first, that the nature of judicial review strips a court of the quintessentially legislative prerogative to make rules of law retroactive or prospective within its discretion; and, second, that selective application of new rules of law violates the principle of treating similarly situated parties the same. *Id.* at 323.[6] Dictum in *Griffith*, stating that "civil retroactivity . . . continue[d] to be governed by the standard announced in *Chevron Oil*[,]" *id.* at 322 n.8, caused the Court to divide over its meaning in subsequent cases. In *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167 (1990), Justice O'Connor, writing for a plurality of four justices, explicitly refused to extend *Griffith* to civil cases, and used the *Chevron Oil* test to limit retroactivity of the Court's

---

[6] In *Teague v. Lane*, 489 U.S. 288 (1989), a plurality of the Court concluded that new constitutional rules of criminal procedure would not be applied retroactively in habeas corpus proceedings unless the rule fell within one of two narrow exceptions.

decision in an earlier case invalidating highway use taxes under the Commerce Clause. *Id.* at 179. Four other justices rejected the plurality's approach to retroactivity as "anomalous" and refused to hold that "the law applicable to a particular case is that law which the parties believe in good faith to be applicable to the case." *Id.* at 219 (Stevens, J., joined by Brennan, J., Marshall, J., and Blackmun, J., dissenting). Justice Scalia, concurring in the judgment because he believed that the new rule of law was incorrect, explicitly disagreed with Justice O'Connor's retroactivity analysis, stating that "prospective decisionmaking is incompatible with the judicial role, which is to say what the law is, not to prescribe what it shall be." *Id.* at 201 (Scalia, J., concurring).

In *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), the Court failed to produce a unified opinion for the Court, but a majority agreed that a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect to all others not barred by res judicata or statutes of limitation; and that the theory of selective prospectivity must be abandoned in civil cases.[7]

---

[7] Justice Souter explained the methodology of retroactive, selectively prospective, and purely prospective applications of judicial decisions as follows:

> As a matter purely of judicial mechanics, there are three ways in which the choice-of-law problem may be resolved. First, a decision may be made fully retroactive, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of

limitations. This practice is overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. It also reflects the declaratory theory of law, according to which the courts are understood only to find the law, not to make it. But in some circumstances retroactive application may prompt difficulties of a practical sort. However much it comports with our received notions of the judicial role, the practice has been attacked for its failure to take account of reliance on cases subsequently abandoned, a fact of life if not always one of jurisprudential recognition.

Second, there is the purely prospective method of overruling, under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision. The case is decided under the old law but becomes a vehicle for announcing the new, effective with respect to all conduct occurring after the date of that decision. This Court has, albeit infrequently, resorted to pure prospectivity, although in so doing it has never been required to distinguish the remedial from the choice-of-law aspect of its decision. This approach claims justification in its appreciation that "[t]he past cannot always be erased by a new judicial declaration," and that to apply the new rule to parties who relied on the old would offend basic notions of justice and fairness. But this equitable method has its own drawback: it tends to relax the force of precedent, by minimizing the costs of overruling, and thereby allows the courts to act with a freedom comparable to that of legislatures.

Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement. This method, which we may call modified, or selective, prospectivity, enjoyed its temporary ascendancy in the criminal law during a period in which the Court formulated new rules, prophylactic or otherwise, to

34

Justice Souter, whose lead opinion garnered the most support, reasoned that the equality principle of *Griffith* (that similarly situated litigants should be treated the same) carries comparable or greater strength in the civil context, requiring that: (1) the possibility of selective prospectivity be rejected in civil cases;

> insure protection of the rights of the accused. On the one hand, full retroactive application of holdings such as those announced in *Miranda v. Arizona, Escobedo v. Illinois,* and *Katz v. United States*, would have "seriously disrupt[ed] the administration of our criminal laws[,] . . . requir[ing] the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards." On the other hand, retroactive application could hardly have been denied the litigant in the law-changing decision itself. A criminal defendant usually seeks one thing only on appeal, the reversal of his conviction; future application would provide little in the way of solace. In this context, without retroactivity at least to the first successful litigant, the incentive to seek review would be diluted if not lost altogether.
>
> But selective prospectivity also breaches the principle that litigants in similar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally. For this reason, we abandoned the possibility of selective prospectivity in the criminal context in *Griffith v. Kentucky*, even where the new rule constituted a "clear break" with previous law, in favor of completely retroactive application of all decisions to cases pending on direct review. Though *Griffith* was held not to dispose of the matter of civil retroactivity, selective prospectivity appears never to have been endorsed in the civil context. This case presents the issue.

*Id.* at 535-38 (internal citations omitted).

and (2) when a court has applied a new rule of law to the litigants in the case before it, that application necessarily is a retroactive application of the rule to a cause of action based on events predating its adjudication, and therefore must be applied with equality to all similarly situated litigants, except as to rights acquired by them through the operation of res judicata or statutes of limitation, due to the need for finality and an end to litigation.  Three justices dissented, defending the practices of both pure and selective prospective application of decisions and the continued viability of the *Chevron Oil* test.  *Id.* at 549 (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J., dissenting).

In *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), Justice Thomas authored a five-member majority opinion expressly adopting a rule that "fairly reflects the position of a majority of Justices in *Beam*":

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.  This rule extends *Griffith's* ban against "selective application of new rules."  Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal context, we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases.  In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to the "particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule.  Our approach to retroactivity heeds the admonition that

36

"[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently."

*Id.* at 97 (internal citations omitted).

Justice O'Connor, joined by the Chief Justice, dissented from the Court's rejection of the use of prospective retroactivity under the *Chevron Oil* test, and expressed concern that the forgoing language and another statement in Justice Thomas's majority opinion "intimates that pure prospectivity may be prohibited as well." *Id.* at 115 (O'Connor, J., joined by Rehnquist, C.J., dissenting). Justices Kennedy and White, concurred in part, disagreeing with that aspect of the majority opinion and expressing their continuing view that pure prospectivity will be appropriate sometimes in the civil context. *Id.* at 110 (Kennedy, J., joined by White, J., concurring in part and concurring in the judgment).

The Supreme Court in *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), held that under *Harper* its decision in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988), must be applied retroactively to plaintiff Hyde's lawsuit filed in 1987 arising out of a 1984 vehicular accident, and that the Supremacy Clause of the Federal Constitution bars Ohio from applying its tolling statute to pre-*Bendix* torts and thus requires reversal of the Ohio Supreme Court's refusal to apply *Bendix* retroactively. In *Bendix,* the Court had held unconstitutional (as impermissibly burdening interstate commerce) an Ohio "tolling" provision that, in effect, gave Ohio tort plaintiffs unlimited time to sue out-of-state (but not in-state) defendants. The

37

*Reynoldsville Casket Co.* Court accepted Hyde's acknowledgment that *Harper*:

> held that, when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as "retroactive," applying it, for example, to all pending cases, whether or not those cases involve predecision events.

*Hyde*, 514 U.S. at 752. Also, the court accepted Hyde's concessions that, as "'a result of *Harper*, there is no question that *Bendix* retroactively invalidated' the tolling provision that makes her suit timely[,]" *id.*, and that *Harper* overruled *Chevron Oil* insofar as the case (selectively) permitted the prospective-only application of a new rule of law. *Id.* Nevertheless, Hyde argued that the Ohio Supreme Court holding that *Bendix* may not be retroactively applied to bar claims in state courts which had accrued prior to the *Bendix* decision should be viewed simply as an effort to fashion a remedy that takes into consideration her reliance on pre-*Bendix* law, under the authority of a recharacterization of *Chevron Oil* as a case in which the Court simply took reliance interests into account in tailoring an appropriate remedy for a violation of federal law. The Court rejected Hyde's argument because she "offers no more than simple reliance (of the sort at issue in *Chevron Oil*) as a basis for creating an exception to *Harper's* rule of retroactivity -- in other words, she claims that, for no special reason, *Harper* does not apply." *Id.* at 759. In so doing, the Court distinguished several examples upon which Hyde relied, as instances in which courts

applying "retroactively" a new rule of law to pending cases, for well-established reasons, found that the new rule did not determine the outcome of the case.

> Thus, a court may find (1) an alternative way of curing the constitutional violation, or (2) a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief, or (3) as in the law of qualified immunity, a well-established general legal rule that trumps the new rule of law, which general rule reflects both reliance interests and other significant policy justifications, or (4) a principle of law, such as that of "finality" present in the *Teague* context, that limits the principle of retroactivity itself. But, this case [where a concern about reliance alone has led the Ohio court to create what amounts to an ad hoc exemption from retroactivity [*id.* at 758]] involves no such instance[.]

*Id.*

Evidently, the Supreme Court has concluded that the *Linkletter* and *Chevron Oil* departures from traditional retroactivity doctrine proved unsatisfactory. The Court's most recent decisions substantially reject those departures and return to the general rule of adjudicative retroactivity, leaving only an indistinct possibility of the application of pure prospectivity in an extremely unusual and unforeseeable case. *See* Jill E. Fisch, *Retroactivity and Legal Change: An Equilibrium Approach*, 110 HARV. L. REV. 1056, 1059 (1997).

### D. Halphen Is Circuit Diversity Precedent

"Ordinarily, a state court's answer to a certified question is final and binding upon the parties between whom the issue arose." *Sifers v. General Marine Catering Co.,* 892 F.2d 386, 391 & n.22

39

(5th Cir. 1990) (citing *Hopkins v. Lockheed Aircraft Corp.*, 394 F.2d 656, 657 (5th Cir. 1968); *National Educ. Ass'n. v. Lee County Bd. of Pub. Instruction*, 467 F.2d 447, 450 n.6 (5th Cir. 1972); *Redgrave v. Boston Symphony Orchestra*, 855 F.2d 888, 903 (1st Cir. 1988); 17A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4248, at 179 (2d ed. 1988)). Such an answer, therefore, generally becomes "the law of the case," *Sifers,* 892 F.2d at 391 & n.23 (citing *Boyd v. Bowman*, 455 F.2d 927, 928 (5th Cir. 1972) (per curiam); *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 14-15 (1st Cir. 1976) (per curiam)); and, further, because we consider the state court's answer to be binding in the proceedings between the parties to the certified case, that answer becomes the law of this circuit and binding upon parties who were not parties to the certified case. *Sifers,* 892 F.2d at 391-92.

In *Halphen v. Johns-Manville Sales Corp.*, 788 F.2d 274 (5th Cir. 1986), this court received the Louisiana Supreme Court's answer to a certified question with the state court's opinion, *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110 (La. 1986), and applied that interpretation of Louisiana law by the state supreme court to the parties and the case before this court. Subsequently, this court has applied *Halphen* retroactively (and prospectively) to cases arising both before and after the state supreme court's decision.[8] Thus, *Halphen* is the controlling law of

---

[8] *See e.g., Robertson v. Superior PMI, Inc., 791 F.2d 402 (5th Cir. 1986); Vickers v. Chiles Drilling Co., 822 F.2d 535 (5th Cir. 1987); Houston Oil & Minerals Corp. v. American Int'l Tool Co., 827 F.2d 1049 (5th Cir. 1987), cert. denied, 484 U.S. 1067 (1988); Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258 (5th Cir.*

40

this circuit in Louisiana diversity cases, and must be applied to the present case because it arose and was pending when *Halphen* was decided.

### IV. CONCLUSION

For the reasons assigned, we conclude that the Louisiana Supreme Court will continue to apply its general rule under which a judicial decision must be given retroactive effect unless the rendering court specifies otherwise or such application is barred by prescription or res judicata. Under that rule, which is the generally accepted norm in all common and civil law jurisdictions, the *Halphen* decision, which was silent as to its temporal application, must be applied retroactively, consistently with prescription and res judicata provisions. Further, because *Halphen* was applied to the parties in that and subsequent cases, it is circuit precedent and must be applied to the present case.

The judgment and ruling of the district court appealed from by the plaintiffs-appellants are REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED

---

1988), *cert. denied,* 488 U.S. 1042 (1989); *Valenti v. Surgiteck-Flash Med. Eng'g Corp.,* 875 F.2d 466 (5th Cir. 1989); *Pennington v. Vistron Corp.,* 876 F.2d 414 (5th Cir. 1989); *Davis v. Commercial Union Ins. Co.,* 892 F.2d 378 (5th Cir. 1990); *Klem v. E.I. DuPont De Nemours & Co.,* 19 F.3d 997 (5th Cir. 1994); *Reeves v. AcroMed Corp.,* 44 F.3d 300 (5th Cir.), *cert. denied,* 515 U.S. 1104 (1995); *Reeves v. AcroMed Corp.,* 103 F.3d 442 (5th Cir. 1997).